[No. 4930.    Decided April 8, 1904.]

WASHINGTON TIMBER & LOAN COMPANY, *Appellant,* v. E. M. SMITH, *et al., Respondents.*[1]

TAXATION — ACTION TO FORECLOSE COUNTY DELINQUENCY CERTIFICATES—DESCRIPTION OF TRACTS—SUFFICIENCY. In an action to foreclose the county's lien for taxes under delinquency certificates, capital letters and figures standing alone may be used to describe the tracts, where they are abbreviations commonly understood in their relations to each other in the description of

[1]Reported in 76 Pac. 267.

lands, in view of Bal. Code, § 1748, providing that letters and figures standing alone may be used to describe the tracts.

SAME—VARIANCE. The use of the fractional "¼" in the summons is not a variance from the figure "4" in its algebraic exponent position elsewhere used in the proceedings to indicate subdivisions of a section, since both commonly indicate the same thing in descriptions.

SAME—JUDGMENT—CERTAINTY—AMOUNT INDICATED BY POSITION OF FIGURES IN COLUMNS. In a general proceeding to foreclose county delinquency tax certificates, the amount of the judgments may be shown by columns of figures, and a line drawn through the column may take the place of the decimal point, when the context shows that was the intention; and a tax lien judgment against many tracts of lands, in which the description of the tracts appears in one column, the amounts of the delinquent certificates in another, the 15 per cent interest in another, and the total amount of the judgments in another column, sufficiently designates the amounts of the judgments against the respective tracts of land in the corresponding or opposite columns.

SAME — TAX CERTIFICATES — DATE OF ISSUANCE—SIGNATURE OF OFFICER—ACTION WHEN NOT PREMATURE. Where the county treasurer prepared certificate of delinquency books, computing interest to January 31, 1898, which were kept in his office and intended as certificates of delinquency as of that date, but which were not signed by him, and his successor in office, upon foreclosure on behalf of the county, adopted the certificates without computing the interest, making copies thereof, which he signed and filed in the clerk's office in May, 1901, the certificates for all essential purposes were issued at the time of their preparation, January 31, 1898, as the signature of the officer was not essential to the lien held by the county; and hence the law of 1901, p. 385, § 3, prohibiting the bringing of suit at the time upon certificates thereafter issued, has no application.

SAME — DATE OF FILING CERTIFICATES — NUNC PRO TUNC ORDER CHANGING DATE—ESTOPPEL BY FAILING TO OBJECT BELOW. Where in a tax foreclosure the court had jurisdiction of the cause, and by a *nunc pro tunc* order the filing mark on the certificates was changed from June 10, 1901, to May 9, 1901, which latter date was fifteen days before the first publication of the summons as required by the law, an objection that the certificates were not filed in time relates to a mere irregularity, and must be raised in the court below or the party is estopped under the provisions of Bal. Code, § 1767.

SAME — ESTOPPEL OF OWNERS — NOTICE BY PUBLICATION — TAX FORECLOSURE A PROCEEDING IN REM.     Under Laws 1901, p. 385, § 3, property owners are required to take notice of tax foreclosure proceedings, although the notice is only by publication, and if the owner does not appear he is estopped by the judgment from raising any questions as to the regularity of the same, since the proceeding is *in rem* and not *in personam*.

SAME — NOTICE OF RECEIPT OF BOOKS — FAILURE OF RECORD TO SHOW PUBLICATION.     The failure of the record to show that the treasurer published notice of the receipt of the tax books, as required by Laws 1893, p. 353, § 70, does not invalidate a tax foreclosure, where it is not alleged that such notice was not in fact given, but only that no record thereof exists, as the absence of the record would be a mere irregularity.

Appeal from a judgment of the superior court for Snohomish county, Denney, J., entered August 29, 1903, dismissing an action to cancel a tax deed, upon sustaining a demurrer to the complaint.     Affirmed.

*Sherwood & Mansfield* and *Brownell & Coleman,* for appellant.

*Ballinger, Ronald & Battle* and *McGuinness & Miller,* for respondent.

HADLEY, J.—It is sought by this action to procure a decree cancelling and declaring void a certain tax deed. The deed was made by the county treasurer of Snohomish county, by authority of tax foreclosure proceedings.     The proceedings were instituted by Snohomish county to foreclose against real estate upon which delinquent tax certificates had been issued to the county.     The action was for the purpose of foreclosing the lien for delinquent and unpaid taxes for the year 1895, and years prior thereto, and included a large amount of property other than that involved in the present suit.

The complaint in this action alleges a number of reasons which, it is claimed, rendered the foreclosure inef-

fectual and the deed void. It is alleged that the sum paid at the tax sale was $224.15, and that the land is worth $1,500. It is also alleged that a tender of the amount, with fifteen per cent interest per annum, from date of sale, was made, which was refused, and that the tender was kept good by bringing the money into court. A general demurrer to the complaint was sustained. The plaintiff elected to stand upon its complaint, and refused to plead further. Judgment was thereupon entered dismissing the action. The plaintiff has appealed.

This action not only involves the particular property and taxes mentioned in the complaint, but also indirectly involves the validity of the foreclosure proceedings by which Snohomish county attempted to enforce the lien for all delinquent taxes for the year 1895, and previous years, upon property against which certificates of delinquency had not been issued to individuals.

The first point urged is that there was no sufficient description of the land in the foreclosure proceedings. As an example of the several descriptions, the following, as one, appears in the certificate of delinquency, and in the judgment: "NE$^4$ of SW$^4$ Sec. 4 Twp. 30 Range 6," etc. In the summons the description of the same tract is as follows: "NE$\frac{1}{4}$ SW$\frac{1}{4}$ Sec 4 T 30 R 6," etc. In all the proceedings the property is described by capital letters alone, followed simply by the figure "4" arranged somewhat in the position of an algebraic exponent, or by the fraction "$\frac{1}{4}$". It is urged that the use of the fraction "$\frac{1}{4}$" in the summons is a fatal variance from the description used elsewhere in the proceedings, and, in any event, that the use of mere letters is not a sufficient description. Decisions from the states of Minnesota, North Dakota, and South Dakota are cited in support of appellant's argu-

ment.  The following cases are cited: *Keith v. Hayden,* 26 Minn. 212, 2 N. W. 495; *Knight v. Alexander,* 38 Minn. 384, 37 N. W. 796; *Power v. Larabee,* 2 N. D. 141, 49 N. W. 724; *Power v. Bowdle,* 3 N. D. 107, 54 N. W. 404; *Turner v. Hand County,* 11 S. D. 348, 77 N. W. 589; *Stokes v. Allen,* 15 S. D. 421, 89 N. W. 1023. ` The above decisions in the main seem to sustain appellant's argument.  In this state, however, we have the following statutory provision:

"In all proceedings relative to the levy, assessment, or collection of taxes and any entries required to be made by any officers, or by the clerk of the court, letters, figures and characters may be used to denote townships, ranges, sections, parts of sections, lots or blocks, or parts thereof, the year or the years for which the taxes were due, and the amount of taxes, assessments, penalties, interest and costs."  § 1748, Bal. Code.

Appellant anticipates the force of the above statute and insists that it should not weigh against its argument, for the reason that Minnesota has a similar statute, and that the decisions cited from that state were made in the face of the statute.  The Minnesota statute appears to have been passed in 1878.  See § 1627, Vol. 1, Stats. of Minn. The first cited decision from that state—*Keith v. Hayden, supra*—involved a title made under the general tax law of 1874.  The opinion is brief and no reference is made to any statute.  Presumably there was no similar statute prior to 1878.  The later case of *Knight v. Alexander, supra,* involved a title acquired under a tax judgment entered in 1880.  The statute of 1878 was then in force but no reference is made to it in the opinion.  The opinion seems to have simply followed *Keith v. Hayden.*  We, however, believe that force should be given to our own statute in the premises, and if the abbreviations—whether

of letters or figures—and their relations to each other as used are such as are commonly understood in the descriptions of lands, they should be held sufficient. We think they are such in this case. For example, "NE$^4$ SW$^4$ Sec. 4 Twp. 30 R. 6" and "NE¼ SW¼ Sec. 4 Twp. 30 R. 6" are commonly understood to mean the same thing, and are read as follows: "Northeast quarter of southwest quarter of section 4, township 30, range 6." Moreover, we think the weight of authority is against the strict rule announced by the states whose decisions are cited above. *Taylor v. Wright,* 121 Ill. 455, 13 N. E. 529; *Jordan etc. Ass'n v. Wagoner,* 33 Ind. 50; *Havard v. Day,* 62 Miss. 748; *State v. Mayor,* 36 N. J. L. 288; *Jenkins v. McTigue,* 22 Fed. 148; *Judd v. Anderson,* 51 Iowa 345, 1 N. W. 677; *Minter v. Durham,* 13 Ore. 470, 11 Pac. 231.

The above cases hold that the use of the commonly understood abbreviations, similar to those used in the case at bar, is sufficient, and that a description is certain which can be made certain. After each abbreviated description in the case at bar appeared the following: "40 acres," which, taken in connection with the well-understood meaning of the abbreviations when applied to land descriptions, we think rendered these descriptions sufficiently certain. The use of the fractional abbreviation "¼" in the summons instead of the figure "4" in its algebraic exponent position was not a variance, since, as a matter of common knowledge, both are used to designate the same thing in the descriptions of lands.

It is next urged that the judgment in the foreclosure case is unintelligible as to amount. The judgment, as far as it refers to the lands involved in this suit, is as follows:

| To whom assessed or name of owner | Description | Sec. or Lot | Twp. or Blk | Range | Acres | Years | Valuation | Total Tax, Int'st & Costs due Jan 31, '98 | | Amount of Judgment | | Paid by | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| J. H. Smock | NE⁴ SW⁴ | 4 | 30 | 6 | 40 | '95 | 130 | 4 | 07 | 407 226 | | 331 218 638 319 594 208 630 126 | 625 33 10 4365 |
| J. H. Smock | NW⁴ SW⁴ | 4 | 30 | 6 | 40 | '95 | 120 | 4 | 16 | 416 231 | | 506 202 656 328 528 186 560 112 | 555 28 10 4118 |
| J. H. Smock | SW⁴ SW⁴ | 4 | 30 | 6 | 40 | '95 | 180 | 6 | 25 | 625 344 | | 450 299 656 328 528 186 560 112 | 625 33 10 4765 |
| John H. Smock | NW⁴ NW⁴ | 9 | 30 | 6 | 40 | '95 | 235 | 8 | 15 | 815 448 | | 599 390 656 328 512 180 560 112 | 625 31 10 5266 |

(NOTE.—The figures in small type in the last three columns appear on the roll in red ink.)

Appellant asks the following questions: "What was the judgment rendered by the court against each tract of land? Take the amount entered against the first description: Was it 407 or 4,365? Are cents or dollars or both referred to? Is the amount the first amount appearing, or the last amount appearing?"

Having regard to appellant's inquiries, we refer first to the perpendicular column at the top of which is the following: "Total tax int'st and costs due January 31, 1898." It will be observed that a line is drawn through the center of the column, so designated, and, from the context, it was evidently intended that this line should fill the place of a decimal designation between dollars and cents, as is usual in such columns. It is therefore apparent that the amount of tax, interest, and costs against the first described tract, at the date named, was $4.07. Referring now to the next column, designated as "Amount of Judgment," we find the same figures first reproduced in that column, but without any decimal line or point separating them. It is evident, however, from the previ-

ous columns and from the record back of the judgment, that the sum named in the previous column was the amount due as stated in the certificate of delinquency, reckoned to January 31, 1898, and that the certificate was intended to be as of that date. When the same figures reappear in the next column as a part of the amount of the judgment, they must therefore refer to the same thing as in the previous column, since the law first provides that the judgment shall be for the amount of the certificate, and next that fifteen per cent per annum interest shall be added thereto. Bearing the latter fact in mind, and computing interest upon $4.07 at the rate named, from January 31, 1898, to the date of the judgment— October 29, 1901—we have $2.26, which figures correspond to those next appearing in the column. It is thus apparent that the first figures mean $4.07, the original amount in the certificate, that the others mean $2.26, the interest thereon, and that the two together make the amount of the judgment against the tract of land described along the horizontal column at the left. Thus the judgment is, we think, intelligible as to amount.

The figures further to the right, along the horizontal column, are not designated as bearing any relation to the judgment, and we are, therefore, not necessarily concerned with them, since we can readily determine the amount of the judgment without reference to them. It is explained by counsel, however, that the figures at the right of the judgment column refer to the several amounts of delinquent and unpaid taxes upon said lands for the years subsequent to 1895, and to the interest thereon, and that they were placed there for the convenience of the treasurer in estimating the amount a purchaser would be required to pay.

Appellant cites *Lawrence v. Fast,* 20 Ill. 338, 71 Am. Dec. 274, as authority that, in a judgment for taxes, the use of mere numerals without marks indicating for what they stand is insufficient. It was there held that the failure to use words or characters indicating dollars, cents or mills was fatal. Breese, J., however, disagreed with the majority and said:

"It is certain to every ordinary intent that the figures in the proper columns indicated cents, or dollars and cents. The most common man would so understand them, and could not be misled by them."

Appellant also cites *People v. San Francisco Savings Union,* 31 Cal. 132. This case seems to have followed the Illinois case cited above. And the same was also true in *Tidd v. Rines,* 26 Minn. 201, 2 N. W. 497. The later Minnesota case, *Gutzwiller v. Crowe,* 32 Minn. 70, 19 N. W. 344, however, held that mere numerals are sufficient to designate the amount of a judgment when a line is drawn between the figures so as to indicate that it is a decimal line. In that case the amount of the judgment was stated precisely as in the total-tax-interest-and-costs column in the case at bar. In the case of *State v. Eureka etc. Co.,* 8 Nev. 15, the Illinois and California decisions upon this subject are reviewed, and that court adopted the views expressed by Breese, J., in his dissenting opinion in *Lawrence v. Fast, supra.* See, also, *Jenkins v. McTigue, supra,* where the Illinois and California cases are again discussed, but the court declined to follow them. We are disposed to the view that no hard and fast rule should be adopted by which the absence of characters or words indicating the denominations of numerals shall be held to be fatal. Each case should rather be governed by its own facts and surroundings, and if, in connection therewith, the text shows for what the numer-

als were intended, as tested by ordinary usage in such relations, then they should be so read.

The next point urged against the foreclosure proceedings is that the suit was commenced too soon. It is contended that the statute, as found in § 3, p. 385, Session Laws of 1901, prohibited the bringing of the suit when it was brought, and that the court did not, therefore, have jurisdiction. That act, by an emergency clause, went into effect March 20, 1901. It was therefore in force when the first publication of the summons in the foreclosure case was made, May 24, 1901. It will be observed, by reference to the act, that it provides that, after the expiration of five years from the date of delinquency, when no certificates have been issued as to the property, certificates of delinquency may issue on such remaining property, to the county, and that the same shall be thereafter foreclosed. The tax for the year 1895 became delinquent May 31, 1896, and it is manifest that the foreclosure was commenced prior to the expiration of five years from the date of delinquency, and which, if the statute of 1901 governed this certificate, was before the certificate itself could issue.

A necessary question to be considered is, when was the certificate of delinquency issued? Appellant contends that it was issued May 9, 1901, which was after the 1901 law took effect, and before the expiration of five years from date of delinquency. Respondents claim that the certificate was issued January 31, 1898. If issued on the latter date, it was authorized by the laws of 1897, § 98, pp. 182, 183, which placed no limitation upon the time as to when the certificate might issue to the county. If issued then it was a certificate which could have been foreclosed in May, 1901. The five-year postponement

applied only to certificates thereafter issued upon property against which no issue had already been made.

The complaint in this suit alleges, that prior to January, 1901, the then county treasurer made out books of certificates running to the county, including the land involved in this action, but did not sign them; that, when the present treasurer first took office, in January, 1900, he found said books of certificates unsigned as aforesaid, and thereafter made copies of such certificates, likewise in book form, but omitting descriptions of such land as had been redeemed; that on May 9, 1901, the said certificate of delinquency books, so copied and signed, were taken by the county treasurer to the office of the clerk of the superior court, to which officer the treasurer stated that he filed the books. It thus appears from the complaint that the former treasurer did make out certificate of delinquency books to the county, and the same were kept in his office. A copy of the certificate, so made out as to the property involved in this suit, is filed with the complaint as an exhibit. It shows that the interest on the tax was figured to January 31, 1898; thus making it clear that the former treasurer intended the books as certificates of delinquency, issued as of that date. His successor adopted the same certificates, and neither made any new computation as to interest, nor otherwise changed them.

It is true the former treasurer had not formally signed the books of certificates, but they showed plainly what they were, and for what they were intended. Being in his custody and possession as the agent of the county, the county treated them as certificates of delinquency held by it. The so-called certificates, when issued to individuals, must be signed in order to effect a transfer of the tax

lien to the holder; but, in the case of the county, the lien had at all times been held by it, and the mere signing of the books by its officer would in no sense have transferred or changed the holding of the lien. The act done by the county, through its agent, was the essential thing, and that act was the preparation of a record which was kept in his office, and which showed a statement of delinquent and unpaid taxes, for which no certificates had issued to individuals, with a further statement of the amount due at the time against each tract of land. It would seem that any vital or forceful purpose, served by the signature of the officer in such a case, is accomplished if he signs it before filing in the office of the clerk of the superior court. The record has then passed from the possession of the tax collecting department to serve judicial purposes. This was so signed before it was filed in the clerk's office. The record upon its face showed its purpose, and the signature of the officer, in effect, amounted to a mere statement that such was theretofore a a record in the treasurer's office. We believe, therefore, that, for all essential purposes, the statement made by the county in this instance, and which the statute denominates a certificate of delinquency, was in fact issued January 31, 1898. It follows that the foreclosure suit was not commenced too soon, and that the court did have jurisdiction of the cause.

The next objection to the sufficiency of the foreclosure is, that the certificates of delinquency were not properly filed in the office of the clerk of the superior court before publication of summons. The complaint, however, shows that a *nunc pro tunc* order was made by the court in the foreclosure cause, by which it was declared that the certificates were in fact filed in the clerk's office on May 9,

1901, and it was directed that they be so marked, which was done, and the file mark was changed from June 10, 1901, to the above named date. That date was fifteen days before the first publication of the summons. It having been already determined that the court had jurisdiction of the cause by reason of the time the certificates were issued, and it appearing by the record that the certificates were filed in time, it follows that the point now raised relates to a mere irregularity which should have been raised in the foreclosure case. While the *nunc pro tunc* order was made after judgment, yet, assuming, as we must, that the record speaks the truth, the correction was such a one as could have been made during the progress of the action, under § 18, p. 299, Laws of 1899. Appellant is therefore estopped to raise the objection now. See, § 1767, Bal. Code. Also, *Swanson v. Hoyle,* 32 Wash. 169, 72 Pac. 1011. The summons and its publication, we think, complied with the law. The property owner was therefore within the jurisdiction of the court, and was required to take notice of the action. The summons was by publication, it is true, but, under § 3, pp. 385, 386, Laws of 1901, "all persons owning or claiming to own, or having or claiming to have, an interest therein are hereby required to take notice of said proceedings, and of any and all steps thereunder."

Appellant insists that, notwithstanding the statutes above cited and quoted, it is not estopped to raise objections now, and argues that Illinois has similar statutes, but that it has been held in that state that, where the taxpayer does not appear and make objection prior to the rendition of the judgment, there is no estoppel. It appears to have been so held in *Belleville Nail Co. v. People ex rel.,* 98 Ill. 399. We, however, find no Illinois

statute with a specific declaration that parties shall be estopped, as is the case in our statute cited above. With such a provision in our law, and with the positive declaration, quoted above, that all interested persons shall take notice of the steps taken in the cause, we see no reason why the statute shall not be given the force which was evidently intended, notwithstanding the fact that the summons is by publication only. The difficulties attending the collection of public revenue are many at best, and the relation of the citizen to the subject is somewhat different from his relation to the ordinary contractual obligations. He must take notice that by law his property is assessed each year, that the tax is due and delinquent at a fixed time, is a lien upon his land, and, if not paid, that the lien shall be enforced by foreclosure proceedings, and in the manner provided by statute. The action is not *in personam* but *in rem*, and we see no reason for making the distinction recognized by the above Illinois case, apparently based upon the ground that the service was by publication only.

The last objection urged to the validity of the tax deed under the foreclosure is that, by the terms of § 70, pp. 353, 354, Laws of 1893, under which the taxes of 1895 were assessed, the treasurer was required, upon receiving the tax books, to give notice, by publication in a newspaper, that the books had been so turned over to him. It is urged that there is no record of proof that such notice was given. The complaint, however, does not allege that such notice was not in fact given, but simply that no record proof of such notice exists. Under the allegations, the absence of the proof amounts to a mere irregularity. It is, however, insisted that, under the authority of *Vestal v. Morris,* 11 Wash. 451, 39 Pac.

960, this is a fatal omission.   It will be observed that
the procedure, there under consideration, related to a sum-
mary sale for taxes, in which the taxpayer had no day
in court, and in such cases it is the general rule that a
strict observance of statutory provisions must appear of
record.   But under our foreclosure system, with the parties
before the court, such irregularities as the omission to make
the proof of notice, urged here, may be supplied and the
correction made by the court.   *Smith v. Newell,* 32 Wash.
369, 73 Pac. 369; *Jefferson County v. Trumbull, ante,*
p. 276.   The distinction to be observed between procedure
for summary sales and that in foreclosure was discussed in
*Gove v. Tacoma, ante,* p. 434.

Other points raised by counsel have not been specifically
mentioned, but we believe they are so involved in what has
been said as to make direct reference to them unnecessary.
The discussion has necessarily been extended, but counsel's
labors have been fruitful of suggestions involving much
detail.   We believe the foreclosure procedure was suffici-
ently within the law authorizing counties to foreclose their
unassigned tax liens, and that appellant is now estopped to
attack them or the deed made thereunder.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, DUNBAR, and ANDERS,
JJ., concur.