[No. 8814. Department Two. June 21, 1910.]

## PUGET SOUND NATIONAL BANK, *Respondent*, v. ANNIE BISWANGER et al., *Appellants*.[1]

TAXATION—TAX TITLE—VACATION—PAYMENT OF TAX—OMISSION OF TAXING OFFICER. A tax foreclosure and deed is void where the owners, in an honest attempt to pay the taxes, delivered to the county treasurer a list of the property and blank checks with authority to fill in the same for the amount, and through an error of the treasurer, not known to the owners, taxes on part of the property were not paid.

SAME—TAX RECEIPT. In such a case actual payment is made, and the tax receipt given is only evidence of payment and is immaterial.

SAME. Where taxes on part of the lands had in past years been paid by a lessee in possession, and the owner gave the county treasurer sufficient to pay all the taxes, he is not bound to notice an obscure annotation in the tax receipt stating, "less pt. to O. I. Co.," as disclosing the mistake of the county treasurer in excepting part of the lands.

[1]Reported in 109 Pac. 327.

TAXATION—ACTION TO SET ASIDE TAX TITLE—PLEADING—AMEND-
MENT—WAIVER. In an action to set aside a tax title, it is not an
abuse of discretion to allow a complaint alleging excusable neglect
in paying the taxes to be amended to allege payment and a mistake
of the county treasurer, where no application for a continuance was
made.

Appeal from a judgment of the superior court for King
county, Morris, J., entered October 28, 1908, upon find-
ings in favor of the plaintiff, after a trial on the merits be-
fore the court without a jury, in an action to cancel a tax
title. Affirmed.

*William C. Keith*, for appellants.
*Harold Preston*, for respondent.

DUNBAR, J.—This is an action to vacate the proceedings
in a tax foreclosure action involving the lands in question,
and to cancel the record of tax deeds. The judgment was
in favor of the plaintiff.

It is unnecessary to set forth the deraignment of title in
the plaintiff. The court found, among other things, that
the Puget Sound National Bank, owning a two-fifths un-
divided interest, and Mary B. Kittenger, owning a one-fifth
undivided interest in said land, endeavored to pay before de-
linquency all taxes assessed thereon for the years 1901-2-3-4,
by paying to the county treasurer the full amount of said
taxes; but of the moneys so paid to him the county treasurer
applied only enough to pay the taxes upon all of said prop-
erty except tax lot 4 hereinafter described, and delivered re-
ceipts to the said Puget Sound National Bank reciting the
payment of all of said taxes for the years 1902 and 1903,
but the 1901 and 1904 receipts delivered by him to said bank
contained an exception of a part to the Oregon Improve-
ment Company; that the said treasurer delivered to said
Mary B. Kittenger receipts showing full payment of all
said tax on all of said land for the years 1901-2-3, but the
receipt delivered by him to her for the 1904 taxes contained

an exception of a part to the Oregon Improvement Company; that for said years the portion of the land above described, which is hereinafter described as tax lot No. 4, was sold to the Oregon Improvement Company, a corporation which had previously been operating a railroad in King county; that at the time of receiving said receipts, both the said bank and said Kittenger were ignorant of the fact that any of the said land had been assessed to the said Oregon Improvement Company, and were misled by such receipts into believing that the excepted part was intended in each case to be the right of way of the Northern Pacific Railway Company, and neither the said bank nor the said Mary B. Kittenger ever knew that the taxes upon any part of such land for said years had not been paid, until long after the tax foreclosure proceedings hereinafter referred to, nor until shortly before the commencement of this action; nor did either of them ever have any knowledge or notice of the pendency of said tax foreclosure proceeding, but first learned of it within thirty days prior to the commencement of this action, and no summons or other process in said tax foreclosure proceeding was ever served upon them or either of them; that owing to the mistake of the county treasurer aforesaid in not paying the taxes upon said lot 4 out of the money so as aforesaid paid him by the owners thereof for that purpose, and owing to misunderstanding of the facts aforesaid by the said Kittenger and the bank, the taxes upon said lot No. 4 were not paid for the years 1901-2-3-4, and that subsequently a certificate of delinquency issued; and recited the proceedings leading up to the tax judgment.

The court also found that in such tax foreclosure proceeding, the plaintiff, A. Biswanger, could readily have made service upon said Oregon Improvement Company and its successor the Pacific Coast Company, or either of them; that he made no *bona fide* effort to give notice to such companies or either of them, of said tax foreclosure proceedings; that he caused a summons in said action to be published in the

Auburn Argus, a weekly newspaper published at the town of Auburn in the extreme south end of King county, said newspaper having a limited circulation of five hundred copies, of which not to exceed one hundred and twenty-five were circulated in the city of Seattle, where the said Mary B. Kittenger lived and where the said Pacific Coast Company has its place of business; that no personal service of summons was ever attempted upon any one in such foreclosure action, and no other service by publication was ever made or attempted than that above described.

We think these findings are supported by the testimony in the case. It may be conceded, we think, that there was a *bona fide*, honest attempt on the part of the owners of this land to pay the taxes on the same. The testimony shows that the agent of the Puget Sound National Bank, plaintiff herein, went to the treasurer before the taxes became delinquent and delivered to him a check of said bank with the amount left blank, instructing him to pay the taxes on a list of lands which the agent then delivered to the treasurer, and to fill in the amount in the check necessary to make such payment. The same thing was done by Kittenger, as agent for his wife Mary B. Kittenger, who was then the owner of a portion of the land, except that the check in this instance and the list of lands upon which the tax was desired to be paid were sent by mail.

We have decided, in *Smith v. Jansen*, 43 Wash. 6, 85 Pac. 672; *Bullock v. Wallace*, 47 Wash. 690, 92 Pac. 675; *Loving v. McPhail*, 48 Wash. 113, 92 Pac. 944, and *Taylor v. Debritz*, 48 Wash. 373, 93 Pac. 528, that the efforts of the owner in good faith to pay a tax before delinquency, which was prevented by mistake of the county treasurer, was equivalent to a payment, and rendered a tax sale therefor void. In *Smith v. Jansen*, *supra*, it was decided that the *prima facie* presumption arising from the production of the tax deed was overcome by the admission that the tax had been paid; that the statute by clear and unmistakable impli-

cation permits the property owner to show in a collateral
proceeding that the tax or assessments have been paid, or
the real estate was not liable to the tax or assessment, and
that, when either of these facts is shown, the implication that
the tax judgment and tax deed must give way is equally ex-
plicit.   We have frequently held that the property owner is
chargeable with notice that taxes are levied against his prop-
erty annually, and that it is his duty to see that the taxes
are paid.   It is necessary for the perpetuity of the govern-
ment that the public revenues be collected.   But it was said
in *Smith v. Jansen*, that, when the property owner had paid
his taxes, he had discharged his obligation to the state, and
that he had no reason to expect that proceedings would be
taken against him or his property, and he was not required
to be ever on the lookout lest some negligent or corrupt offi-
cial should cause or suffer his property to be sold for a tax
that had long since been paid.

The question to be determined in this case is, Do the facts
found by the court, and which are sustained by the record,
bring the plaintiff within the rule announced in these cases?
It is true that, in most of these cases, the taxes had actually
been paid and, by some mistake of the treasurer that fact
did not appear; but there was an honest and *bona fide* at-
tempt on the part of the owners in this case to pay the
taxes.   Money had been forwarded to the treasurer for that
purpose, there being no question raised here of the value of
the checks furnished.

But it is contended by the appellants that the exception
noted in the tax receipt was sufficient to give notice to the
owners that the taxes had not been paid on a portion of this
land.   It seems that a strip of land had been leased to the
Oregon Improvement Company for use in the operation of
its road, with the agreement that the said company was to
pay the taxes on that strip of land; that it had paid the
taxes for some time, and had finally abandoned the land, and
had not since said abandonment paid said taxes; that the

Northern Pacific Railway Company also was in the posses-
sion and use of a certain portion of this land and, as the
court found, had paid the taxes on the portion which it
occupied.   The court found that, by reason of this condition,
the owners were misled by the statement in the receipts, think-
ing that it referred to the portion of the land on which the
Northern Pacific Railway Company was to pay taxes, and
believing that such taxes had been paid, and the fact was
that such taxes had been paid by the Northern Pacific Rail-
way Company.   The tax receipts are exhibits in the case,
and they show a receipt for the land in question but, immedi-
ately after the description of the land, is added in some of
the receipts, in very close lettering and mostly written in
indelible pencil where the words are more or less run to-
gether, the following: "less pt. to O. I. Co."; and in some
instances: "less pt. to Og. Im. Co."   It would take a close
inspection of these receipts to bring to the notice of the
payor the fact that the taxes on the land described in the
receipt had not all been paid, and it is difficult to tell just
what the words do mean.   But in any event, money sufficient
to pay the taxes on all the land had been sent to the treas-
urer, accompanied by a list of the property, with instruc-
tions to pay the taxes on the property listed, and that would
be a good payment if the receipt had never been issued at
all.   The essential thing is the actual payment of the taxes.
The receipt is, of course, only evidence of such payment, and
is only important here to the extent that it sustains the con-
tention that it gave notice to the owners that all the taxes
had not been paid.   Having paid the taxes as a matter of
fact, there is no legal obligation on the part of the payor
to even look at the receipt.   That is purely precautionary.
But even if it did, we think the annotations in this receipt, if
they can be so denominated, were so obscure and uncertain
that they would not convey definite notice to the payor.   It
is not the policy of the law that the owner should lose his
land through excusable mistake, and while it may not be

said that there was any negligence on the part of the treasurer in this case, the fact remains that an honest attempt had been made on the part of the owners to pay the taxes, and that the mistake was one which the exercise of ordinary prudence would not detect.

It is also contended by the appellants that the court erred in allowing respondent to amend its complaint from an alleged excusable neglect of the owner in failing to pay the taxes, to an alleged mistake of the county treasurer. This question of amendment is largely discretionary with the trial court who is familiar with all the circumstances of the case, and we are unable to see in this particular case that the discretion was abused. In any event, no application was made for a continuance, and it has been the uniform decision of this court that, if the defendant deemed itself misled by the change in the complaint, its remedy is to ask for a continuance. In *Smith v. Michigan Lumber Co.*, 43 Wash. 402, 86 Pac. 652, the court, after reciting the facts, said:

"In the light of these facts, it would hardly seem that the appellant could be in earnest when it insists that it was misled as to the person intended to be charged with negligence; but if it were true that it was misled, it did not pursue the remedy necessary to make the error available to it on appeal. It was not enough to object to the amendment. It should have asked for a continuance on the ground of surprise, and not having done this it is in no position to complain of the ruling as made."

Other questions are discussed in the briefs, but they are not controlling. We think the judgment of the court was right, and it will therefore be affirmed.

RUDKIN, C. J., PARKER, MOUNT, and CROW, JJ., concur.