[No. 21828. *En Banc.* December 17, 1929.]

JOHN L. REESE *et al., Appellants,* v. THURSTON COUNTY *et al., Respondents.*[1]

*P. L. Pendleton,* for appellants.

*W. J. Milroy* and *Roscoe R. Fullerton,* for respondents.

[1]Reported in 283 Pac. 170.

HOLCOMB, J.—This action is to set aside a tax foreclosure and sale in so far as they affected the property of appellants as the owners of three hundred and twenty acres of land situated in Thurston county, described in the complaint.

Appellants had failed, for a period of five years prior to 1927, to pay the taxes assessed against the lands described in the complaint, and the treasurer of Thurston county included the same in the general certificate of delinquency issued by the treasurer to the county under date of June 1, 1927. Following the issuance of the certificate, the treasurer, with the assistance of the county attorney, prepared a summons in foreclosure directed to those persons whose names appeared upon the tax rolls as owners of the property issued in the certificate of delinquency. The name John L. Reese and also J. L. Reese appear in the summons. The property of appellants is described in the body of the summons, wherein it is also stated that the taxes are assessed to John L. Reese or J. L. Reese and C. Lutken. The summons shows that, on the treasurer's books, the description of the land, the name of the owner and the amount of the tax appear.

The original summons was subscribed by the county treasurer and by a deputy prosecuting attorney of the county and published in the Tenino Independent, which the court found to have been the county official newspaper, and a legal newspaper, during the time of the publication. The court also found that publication commenced on August 26, 1927, and continued on September 2, September 9, September 16, September 23, September 30, and October 7, 1927.

At the time publication was commenced, the general certificate of delinquency had not been filed with the clerk of the superior court of Thurston county. The court found that, on October 11, 1927, four days after

the date of the last publication, the treasurer filed with the county clerk the original delinquent tax certificate.

Pursuant to a hearing thereon, the decree of foreclosure was entered, the treasurer posted notices of sale as required by the statute, and the sale was set for November 5, 1927. The decree of foreclosure was not filed in the office of the clerk of the court until November 4, 1927, one day before the sale.

At the time the treasurer proclaimed the sale at the front door of the court house, he had in his possession a certified copy of the decree of foreclosure. Respondent Hayes purchased the three hundred and twenty acres in controversy and obtained the treasurer's deed thereto.

Prior to instituting this action, appellants tendered to Hayes the amount expended by him in purchasing the property, together with interest. The tender was refused. The tender was continued in court at the trial. It is not disputed nor its sufficiency questioned.

After the hearing and proofs of the above facts, the trial court made findings in accordance therewith and refused findings proposed by appellants and conclusions of law based thereon, to the effect that appellants were entitled to a judgment setting aside the foreclosure and sale and permitting the payment of the back taxes, interest and costs.

Appellants' errors are all based upon the findings and conclusions so made, and refused, and the judgment rendered thereon.

■ The first contention of appellants raises a question of jurisdiction, to the effect that the court never acquired jurisdiction in the foreclosure proceedings, because the original certificate of delinquency was not filed in the office of the clerk of the superior court until about forty-six days after the commencement of publication of the summons.

Appellants found their contention upon certain statutory provisions relating to the foreclosure of tax certificates; among other things, a part of Rem. 1927 Sup., § 11097-115, being a part of the act of 1925 relating to such foreclosure of delinquent tax liens. That section, in part, reads:

"The notice and summons shall be served in the same manner as a summons in a civil action is served in the superior court."

Rem. Comp. Stat., §§ 220 to 233, are then referred to respecting publication of summons in civil actions; section 233, in part, reading:

"Provided, that publication of summons shall not be had until after the filing of the complaint, . . ."

Appellants therefore argue that, since the first publication of summons was on August 26, 1927, the certificate of delinquency not having been filed in the office of the clerk until October 12, 1927, no jurisdiction could possibly attach until October 12, 1927; that therefore the proceedings were more than irregular, they were void.

The law governing the procedure upon foreclosing certificates of delinquency issued to the county is set forth in Rem. 1927 Sup., § 11097-117. That statute, after authorizing the treasurer to issue certificates of delinquency, directs that the treasurer:

" . . . shall file said certificates when completed with the clerk of the court, . . . shall thereupon, . . . proceed to foreclose in the name of the county, the tax liens embraced in such certificates, and the same proceedings shall be had as when held by an individual: Provided, that notice and summons may be served or notice given exclusively by publication in one general notice, describing the property as the same is described on the tax-rolls."

The statute relating to such foreclosures is the same now as it was in 1901. Laws of 1901, p. 385, §3.

The same question now presented was before us in *Miller v. Henderson,* 50 Wash. 200, 96 Pac. 1052. In that case, an examination of the record shows that the complaint to set aside the tax foreclosure and sale, among other things, alleged:

That the judgment of foreclosure entered in the cause on December 18, 1901, was null and void and of no effect for the reason that the court rendering the same never acquired any jurisdiction of either the persons or the subject-matter of the action; that the treasurer of the county did not, as required by § 3 of the act referred to, issue any certificates of delinquency upon the property of these plaintiffs, nor did the treasurer file any certificate of delinquency against the property with the clerk of the superior court before the publication of summons in the cause nor at any time; that the first proceeding filed in the action No. 113 by the county of Lewis was on November 23, 1901, which pleading was the proof of publication of summons in the cause; that the application for the foreclosure of tax liens under which the property was sold to Lewis county was not filed in the office of the clerk of Lewis county until December 17, 1901, and no book of delinquent certificates was ever filed in the office of the clerk of the superior court of Lewis county as provided for by Laws of 1901, p. 383, and acts amendatory thereof, until January 31, 1902; that, notwithstanding the book of delinquent certificates against the property described in the complaint was not filed in the office of the clerk of the court until January 31, 1902, nevertheless on December 18, 1901, judgment was duly entered in cause No. 113, Lewis county, against all persons known and unknown, owners of the land described therein, foreclosing the liens for taxes on the land for

the year 1895 and prior years against the property described in the complaint.

A demurrer to that complaint on the ground that it did not state facts sufficient to constitute a cause of action was sustained. Appellants stood upon their complaint and the action was dismissed.

It will be observed that, in that case, no other pleading had been filed in the original tax foreclosure, and the book of delinquent certificates was not filed in the office of the clerk of the court until January 31, 1902, although the judgment had actually been entered on December 18, 1901. In other words, no certificate of delinquency against the property involved was ever filed in the office of the clerk of the court before the publication of summons or the entry of judgment or until after the entry of judgment.

The statute relating to publication of summons was the same then as now. In passing upon the contentions of appellant that the proceedings there involved were void, we said:

"This omission to file the certificate of delinquency in the office of the county clerk prior to the issuance and service of the summons could in no manner affect the rights of the appellants. Nor was the thing itself in any way necessary to constitute due process of law, as the proceeding prescribed by the statute would have been as valid and obligatory without this requirement as with it. It being therefore neither essential to the rights of the landowners nor to the legality of the statute, we think the omission of the clerk to comply with it at the time contemplated by the framers of the act did not so far deprive the court of jurisdiction as to require us to hold the sale invalid."

See, also, *Washington Timber & Loan Co. v. Smith,* 34 Wash. 625 (l. c. 636, 7), 76 Pac. 267.

The trial court doubtless felt bound by the above decisions upon the same state of the written law.

■ Appellants contend that the statutes regarding publication of notice should be strictly complied with by officers in the interests of certainty and uniformity.

It is to be regretted that such irregularities, which could easily be avoided, do occur. However, as we have said in several cases, these are proceedings *in rem* and regulations attending the collection of public revenue. The relation of the citizen to such matters is somewhat different from his relation to ordinary contractual obligations. He must take notice that by law his property is assessed every year; that the tax is due and delinquent at a fixed time, is a lien upon his land and, if not paid, that the lien shall be enforced by foreclosure proceedings and in the manner provided by statute. *Washington Timber & Loan Co. v. Smith, supra; McGuire v. Bean,* 151 Wash. 474, 276 Pac. 555.

As stated in the last cited case:

"Like most cases of this character, there is here a certain element of hardship from which we would be glad to relieve, but to do so would unsettle long established rules and lead to uncertainty and difficulty in the collection of taxes which are the life blood of the state."

■ Many other general tax liens were foreclosed and lands sold under this same proceeding. Others may have occurred in other counties within the period of statutory limitations. Under these circumstances, the court deems it a duty to abide by our former precedents, as *stare decisis*.

■ Another contention of appellants relating to failure to give notice to the taxpayer by registered mail, although the same was attempted by the county treasurer, has no merit.

Under the law as amended in 1925 (Laws of 1925, Ex. Ses., p. 306, § 120; Rem. 1927 Sup. § 11097-120),

the provision for notice to the record owner which had existed since 1909, by virtue of which several decisions cited by appellants were made, was omitted. As the law now stands, it is only necessary for the treasurer to post notices of sale in three public places, which the court found was done. The procedure complied with the law without giving any such notice as was attempted.

The judgment is affirmed.

MITCHELL, C. J., PARKER, and MAIN, JJ., concur.

FULLERTON, J., took no part.

FRENCH, J. (concurring)—I concur under the rule of *stare decisis*.

MILLARD, J., concurs with FRENCH, J.

TOLMAN, J. (dissenting)—This being a proceeding *in rem*, it is impossible for me to conceive of the court having acquired jurisdiction of the subject-matter of this action until something in the nature of a complaint was filed as the statute in terms requires. The publication of a summons where no action was pending could have no purpose, could bind no one and was therefore a nullity. I recognize the danger in now overruling cases which have long been relied upon, but the rule which they announce is, in my judgment, so wholly unsound as to call for their overruling in the interest of justice and orderly procedure. I therefore dissent.

BEALS, J., concurs with TOLMAN, J.