[No. 26349. Department One. January 22, 1937.]

ANNIE M. SCHULTZ, *Respondent*, v. ANDREW KOLB
*et al., Appellants.*[1]

*A. O. Colburn,* for appellants.

*M. E. Mack,* for respondent.

STEINERT, C. J.—This is an action to set aside a sale of real estate had under tax foreclosure proceedings and to quiet title to the property in the plaintiff. Trial before the court, without a jury, resulted in findings and conclusions favorable to plaintiff and a decree granting her the relief sought. Defendants have appealed.

[1]Reported in 64 P. (2d) 79.

The property here involved consists of a ten-acre tract of land located about a mile outside the city limits of Spokane. Immediately west of this tract is another tract of ten acres, and immediately north of that is a tract of five acres. All three tracts, separately described, were conveyed to respondent in a single deed from her parents on October 17, 1917. At another time not definitely fixed, respondent obtained from her parents a deed to an adjoining tract of ten acres, making, in all, thirty-five acres held and owned by her.

Upon the five-acre tract above mentioned is a house in which respondent and her husband have lived for twenty-three years; nearby, on the same tract, are a barn, a chicken house, and a brooder house. A portion of the thirty-five acres has been used by respondent, from time to time, for the cultivation of various crops, and the remainder usually for pasturage. The ten-acre tract here involved has no improvements upon it, nor has it been enclosed with a fence for a number of years.

In 1924, respondent, because of financial stress, allowed the taxes upon most, if not all, of her land to become delinquent. In 1929, or thereabouts, she paid the delinquent taxes on all the land except the particular ten acres involved in this controversy. Just why the delinquent tax was not paid on that tract is not known. Respondent herself could give no definite explanation therefor. Most probably it was an oversight on her part, or else because she did not have the money.

In May, 1931, the county treasurer issued to Spokane county a general certificate of delinquent taxes, listing a great number of lots and tracts of land on which taxes for the year 1923 had not been paid. In the certificate was included the ten-acre tract with

which we are here concerned. Shortly afterwards, the county brought an action, pursuant to the provisions of Rem. Rev. Stat., § 11278 [P. C. § 6882-117], to foreclose the tax liens embraced in the certificate. After a decree of foreclosure had been obtained, the unredeemed area, including this particular ten-acre tract, was bid in by the county.

After it had received its deed, the county brought proceedings under chapter 171, Laws of 1925, Ex. Ses., p. 472, as amended by chapter 83, Laws of 1931, p. 244, Rem. Rev. Stat., § 11308-1 [P. C. § 6882-139], *et seq.*, to quiet title to all the property still unredeemed, and in due course obtained a decree. Notice in both of the proceedings just referred to was given by publication, of which respondent had no actual knowledge.

Subsequently, the ten-acre tract involved in this controversy was sold by the county to appellants, through the usual resale procedure.

Upon learning that appellants had purchased the ten-acre tract, respondent endeavored to buy back the property, but without success. She thereupon brought this action to have all proceedings and sales thereunder set aside.

A number of questions have been raised by appellants' assignments of error. The determination of one of these questions will dispose of the others. As remarked by the trial court in its oral opinion at the conclusion of the case, if the original general tax foreclosure proceeding was valid against respondent, then she would not be entitled to relief, and we need go no further.

Respondent does not contend, nor did the trial court hold, that there were any procedural defects in the original tax foreclosure proceeding. The ground upon which relief was sought by respondent and granted

by the court was that there had been a misstatement or misrepresentation by the county treasurer to respondent concerning the tax delinquency and the possibility of any tax foreclosure.

The trial took place May 26, 1936. Respondent's testimony upon the particular question with which we are presently concerned was as follows: From September, 1930, to May, 1931, she had occasion to go to the county court house each month to get a warrant cashed, and, on two of such occasions, several months apart, in the early part of 1931, she went to the treasurer's office to see how her taxes stood. The reason given by her for making the inquiry at those particular times was that her father, who had given her the land, had for many years been paying the taxes, but, because of his advanced age, did not remember such things very well.

On both visits to the treasurer's office, respondent talked to someone behind the counter. Who this person was, she did not know, nor was he ever identified. Respondent referred to him, in her testimony, as the county treasurer or his assistant. At any rate, she told this person, to whom, for convenience, we shall hereinafter refer as the deputy, that she and her husband had been out of work for a couple of years, and that her father had given her the land and had paid the taxes on the particular tract of ten acres, but that she wanted to know whether there were any delinquencies in connection therewith. At the same time, she handed the deputy her deed, which gave the description of three of the tracts.

The deputy took the deed and, using it as a reference, examined certain records back of the counter. After such examination, the deputy told respondent that everything was all right, which, according to her testimony, she understood as meaning that there were

no delinquencies. Asked by her counsel what she would have done if she had been told that there were unpaid taxes on the property, she answered: "Well, we would have done something about it." In response to a leading question whether she was able, ready, and willing to pay the taxes, she replied in the affirmative. Relying on the information given her by the deputy, she paid no further attention to the matter until she learned that appellants had purchased the property on resale.

On cross-examination, respondent testified that, owing to the depression and because her taxes were not entirely paid, she made inquiry concerning any possible delinquencies; further, the deputy had told her that "Everything seems to be all right," and that "You haven't any land that could be put up for back taxes or anything to make you any trouble on for four or five years to come." She admitted, however, that she had received her tax statements, by mail, each year, and it is apparent that respondent knew that her taxes were not all paid.

Respondent was alone when she visited the treasurer's office, and her testimony regarding the alleged inquiry was not corroborated in any way. It appears, also, that in 1931 there were twenty assistants, or deputies, in the treasurer's office, any one of whom might have been the person to whom respondent talked.

Only one of the deputies was called to testify. He was one of those who would most likely have been at the counter where respondent made her inquiry. He, however, knew nothing of the incident. He testified that it was the custom of the office, whenever such inquiries were made, to give the information in writing on special blanks prepared and used for that purpose.

No written statement, however, touching the matter involved here was produced by respondent.

This being an action to quiet title, it is one of equitable cognizance and is, therefore, triable *de novo* on appeal.

The question which we are called upon to decide is whether the evidence in the case is sufficient to set aside a tax foreclosure proceeding which appears from the face of the record to be regular in every respect.

We think that it must be conceded, and in any event, we have no hesitancy in declaring, that, in order to upset a tax foreclosure judgment based upon proceedings in which no irregularity appears upon the face of the record, the evidence of any claimed invalidity of the judgment or any defect therein must be clear, cogent, and convincing.

It is necessary for the perpetuity of the government that the public revenues be collected, *Puget Sound Nat. Bank v. Biswanger,* 59 Wash. 134, 138, 109 Pac. 327, and the legal machinery set up by the legislature for the collection of taxes due the state and its legal subdivisions is favored by the courts as in aid of a most important governmental function, namely, that of raising revenue necessary to maintain and carry on the government. *Colby v. Himes,* 171 Wash. 83, 88, 17 P. (2d) 606.

The difficulties attending the collection of public revenues are many at best, *Washington Timber & Loan Co. v. Smith,* 34 Wash. 625, 638, 76 Pac. 267, and when such collections have been effected in compliance with the methods prescribed by law, the results are not to be frustrated except upon a clear showing of some legal or equitable ground for relief.

Take, for instance, the naked circumstances of this case. If a judgment of this kind, having every aspect of regularity, may be completely overthrown by such

informality of procedure as is disclosed by respondent's testimony, then it is obvious that the doors for the perpetration of fraud will be opened wide and that the stability of a large class and number of titles will be shattered. No one could have any assurance of safety in taking title to property purchased at, or subsequent to, a tax sale, and the result would be that a very important and necessary part of the machinery devised for the collection of public revenue would be rendered useless.

To minimize the danger in that respect, the legislature has, by positive statute, endeavored to give stability and finality to titles derived through tax foreclosures. Rem. Rev. Stat., § 11288 [P. C. § 6882-127] provides that deeds executed by the county treasurer pursuant to tax foreclosure proceedings, shall, in all controversies and suits relating to the rights of the purchaser of the real property thereby conveyed, be *prima facie* evidence of certain facts specifically recited in the statute and confirmatory of the title. The section then concludes as follows:

"And any judgment for the deed to real property sold for delinquent taxes . . . shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered, and as to all such questions the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax has been paid, or the real property was not liable to the tax."

Thus it appears that the conclusive effect of the judgment can be overcome only by proof that the tax has been paid or that the property was not liable therefor.

█ It is not contended by respondent that the tax was ever paid or that the property was not liable for the tax. The legal principle which she advances and relies upon is that an effort made in good faith by the property owner to pay taxes is equivalent to payment to the extent that it will discharge the lien and bar a sale for nonpayment. The following cases are cited in support of the principle: *Loving v. McPhail,* 48 Wash. 113, 92 Pac. 944; *Taylor v. Debritz,* 48 Wash. 373, 93 Pac. 528; *Gleason v. Owens,* 53 Wash. 483, 102 Pac. 425, 132 Am. St. 1087; *Blinn v. Grindle,* 58 Wash. 679, 109 Pac. 122; *Brewer v. Howard,* 59 Wash. 580, 110 Pac. 384. To this collection might be added the following cases, supporting or recognizing the same general principle: *Bullock v. Wallace,* 47 Wash. 690, 92 Pac. 675; *Tacoma Gas & Electric Light Co. v. Pauley,* 49 Wash. 562, 95 Pac. 1103; *Puget Sound Nat. Bank v. Biswanger,* 59 Wash. 134, 109 Pac. 327; *Loving v. Maltbie,* 64 Wash. 336, 116 Pac. 1086.

We concede that this principle expresses the law of this state, but we are convinced that respondent has not brought herself within that principle under the degree of proof required.

An examination of each of the cases just cited will reveal either (1) that the complaint made a clear case for relief upon the principle referred to, sufficient to withstand a demurrer; or (2) that the evidence clearly showed either that the taxes had been paid or that an actual *bona fide* attempt had been made to pay them; or (3) that the treasurer had, by some immediate and direct act of his own, prevented the property owner from paying the tax, which otherwise he would have done.

We have a different situation here. The case did not rest upon the complaint, but was tried upon its merits. The taxes were never actually paid, nor, as we

view the evidence as supplied by respondent's testimony, was there ever a *bona fide* attempt on her part to pay them. The most that can be said for her testimony is that, upon an indefinite occasion, some five or six years prior to the day on which she gave her testimony, she approached some unknown person in the county treasurer's office and inquired of him concerning the state of her taxes, a fact which, under the law, she herself was bound to know. She did not come as one prepared and intending to pay the tax, but simply as one making a general inquiry in order to satisfy some question in her mind as to when a tax delinquency might be foreclosed.

"This court has often held that the procedure [foreclosure of a tax lien by constructive notice] is justified, because the public revenues must be paid, and because the property owner is chargeable with notice that taxes are levied against his property annually, and that the property will be sold in regular course of law, if the taxes are not paid. The foreclosure cannot take place for a number of years after the tax is levied, and if the property owner neglects the payment of his taxes for so long a time, he is in no position to complain of the forfeiture." *Smith v. Jansen,* 43 Wash. 6, 8, 85 Pac. 672.

See, also, *Reese v. Thurston County,* 154 Wash. 617, 283 Pac. 170, and *Colby v. Himes,* 171 Wash. 83, 17 P. (2d) 606, to the same effect.

The evidence falls far short of being clear, cogent, and convincing, to the point of setting aside a solemn judgment of the court. But, assuming that the unidentified deputy did give the information upon the occasion related by the respondent, his act, under such circumstances, cannot, in law, be said to be such a misrepresentation as to constitute fraud upon respondent or such a misstatement as would absolve her of the duty which the law imposed upon her. If, knowing or

believing that there was an unpaid delinquent tax upon her property, respondent had tendered payment or made plain her purpose and desire then and there to pay any tax, delinquent or due, and had been actually prevented from so doing by a statement made by a duly qualified deputy that there was no tax that she could then pay, a different situation would be presented. That, however, is not the case here.

The respondent not having established her asserted claim by the necessary degree of proof, and the case made by her being insufficient in law to set aside the judgment, we conclude that the court erred in holding that the tax foreclosure proceedings were invalid. This disposition of the question makes the remaining questions immaterial.

The judgment is reversed, with direction to dismiss the action.

MILLARD, BLAKE, MAIN, and GERAGHTY, JJ., concur.