[No. 34831.  *En Banc.*  November 5, 1959.]

BORNSTEIN SEA FOODS, INC., *Appellant*, v. WHATCOM COUNTY
*et al., Respondents.*[1]

*Abrams, McCush & Rinker* and *Edward B. O'Connor*, for
appellant.

*T. B. Asmundson,* for respondent Albright.

MALLERY, J.—The plaintiff brought this action to recover
its property which was sold to defendant W. B. Albright
at a tax sale.

On July 2, 1946, Charles A. Bornstein and Joanne V.
Bornstein, his wife, and Myer A. Bornstein and Teresa M.
Bornstein, his wife, purchased real property located in
Whatcom county from Ethel W. Evans. They recorded
their warranty deed with the Whatcom county auditor on
December 9, 1947. On the surface, the land appears as a
unit and was conveyed as such in one deed. However, a
section line runs through it so that part of the land is in
section 30 and part is in section 31. The description of the
land covers over one-half page of single-spaced typing in
the deed and contains over four hundred words and figures.

It is the established practice of the Whatcom county
treasurer's office to send an employee each day to the audi-

[1]Reported in 345 P. (2d) 601.

tor's office to make a transcript of all deeds recorded that day. The employee makes two copies, listing the deed number, the amount of revenue stamps on the deed, the name of the seller, the name of the buyer, and the legal description of the property. One copy is kept in the treasurer's office, and the other copy is given to the assessor from which he changes the plates on his addressograph machine that prints the names on the tax roll. The treasurer uses the same machine to send out tax statements. A correct transcript of the above deed was made by the treasurer's employee. However, someone in the assessor's office failed to include in the assessor's addressograph plate the three bottom lines of the long description as they appeared in the deed.

The result of this error was that the tax statements sent out by the treasurer did not include the land in section 31. As a second consequence, the land appeared to remain in the name of Ethel W. Evans in the assessor's records.

When the grantees conveyed the land to their family corporation in 1950, the assessor's office did not record the change as to section 31, because, for the reason stated above, its records indicated that title to it was still in Ethel W. Evans. The tax statements on the land in section 31 were thus in error in respect to the name of the owner to which it was assessed from 1947 to 1953, when the parcel was sold for taxes.

The plaintiff was unaware of the county's error and thought it had paid the taxes on all of the land included in the recorded conveyances. Immediately upon plaintiff learning of the foreclosure sale of the part of the land lying in section 31, which was omitted from the tax statements, and the purchase of it by defendant W. B. Albright, it made timely demand upon him for the return of the property, together with an offer to pay all taxes and other expenses incurred by him in connection with the sale.

Defendant W. B. Albright refused to return the property, and this action ensued. The trial court quieted title in defendant W. B. Albright, and the plaintiff appeals.

The appellant's position is that it attempted to pay the taxes and was misled into believing it had done so by the erroneous tax statements.

The trial court found that appellant at all times thought the tax statements covered the entire tract and was unaware that the taxes had not been paid on any part of it. The legal description on the tax statement was continued over several pages in a highly abbreviated form, so that anyone unfamiliar with such matters would find it very difficult to comprehend.

■ The appellant had a right to rely upon the accuracy of the county's tax rolls and statements. Culpability for tax-statement errors do not attach to the taxpayer if he acts in good faith and without notice of the defect.

Since 1907, in an unbroken line of cases construing tax-lien foreclosure statutes, we have adhered to the principle expressed in *Nalley v. Hanson*, 11 Wn. (2d) 76, 118 P. (2d) 435, as follows:

" . . . However, the legal principle which this court has consistently followed in just such cases as this is that an effort made in good faith by the property owner to pay his taxes is equivalent to payment, to the extent that it will discharge the lien of the tax and bar a sale for nonpayment thereof. *Schultz v. Kolb*, 189 Wash. 187, 64 P. (2d) 79. . . ."

It was not contended that the appellant had notice of the county's error or that it did not intend to pay its taxes.

The judgment is reversed.

FINLEY, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

DONWORTH, J. (dissenting)—The only portion of the property purchased by the Bornsteins in 1947 which is involved in this case was described in the deed which they received from the seller as follows:

" . . . .

"ALSO all of Government Lot 1, Section 31, Township 38 North, Range 4 East of W.M., EXCEPT right of way of Northern Pacific Railway. LESS roads, situate in Whatcom County, Washington."

The long legal description referred to in the majority opinion pertains solely to the portion of the property (located in section 30) on which all taxes were paid by them (or by their corporation) and hence never has been subject to tax foreclosure proceedings.

In 1950, the Bornsteins conveyed all of this same property to their corporation by deed containing exactly the same legal description as was used in the 1947 deed by which they acquired title.

Through the error of the county officials described in the majority opinion, the Bornsteins (and their corporation) received no notice from the county treasurer regarding the taxes levied against *the above described portion* of the property from 1947 to 1953, and did not learn of the nonpayment of taxes until after the tax foreclosure.

In my opinion, appellants have not in this case sustained the burden (which is theirs) of showing by clear, cogent, and convincing evidence that the judgment in the tax foreclosure proceeding should be set aside upon their collateral attack. See *Schultz v. Kolb,* 189 Wash. 187, 64 P. (2d) 79 (1937).

We should have in mind that the legislature has provided the manner in which taxes are levied annually against realty. The process is basically a proceeding *in rem* against each parcel of real estate in the county and has for its purpose the raising of revenue necessary for the operation of governmental functions. The procedure is described in *Spokane County ex rel. Sullivan v. Glover,* 2 Wn. (2d) 162, 97 P. (2d) 628 (1940), where this court said:

"It has been frequently stated by this court, in cases affecting real estate, that a proceeding to assess and collect taxes upon real property is a proceeding *in rem; that the owner of the property is chargeable with knowledge of every step in the tax procedure;* and that statutory provisions with regard to owners are directory rather than mandatory. [Citations omitted.]" (Italics mine.)

In holding that the statute did not require that a property owner receive actual notice from the county treasurer

regarding his taxes in order for a valid tax lien to be created against his property, it was further stated in that case:

"The legislature certainly did not contemplate, nor intend, that result when it enacted the statute here in question. That body undoubtedly was aware of the settled policy of this state, as reflected by an unbroken line of our decisions, *which charges the owner of property with knowledge of the fact that his property is taxable every year.* The legislature surely did not intend to change that policy and thereafter make the owner's duty to pay taxes conditional upon the sending of a notice by the treasurer.

"We are of the opinion that, when the legislature amended the statute by eliminating the necessity of a request by the owner or taxpayer that notice be sent him, it merely intended to direct the treasurer from that time forward to send notices to all owners of property as shown by his official records. We are satisfied that the statute is purely directory, and not mandatory in the sense that failure to comply therewith renders the whole tax proceeding illegal and void.

"Undoubtedly, the treasurer should make every reasonable effort, based upon the record information in his office, to notify the last known owners of the property assessed; but he is not required to act at his peril, *nor is the county to be deprived of its taxes,* including interest and penalties thereon, *merely because such notice had not been sent.*" (Italics mine.)

The only two grounds provided by the statute (RCW 84.64.180) for collaterally attacking a tax foreclosure judgment are (1) proof that the taxes had been paid, and (2) that the land was not subject to taxation. This court has also permitted such an attack where the taxpayer can prove by clear, cogent, and convincing evidence that he made an effort in good faith to pay the taxes prior to foreclosure and was frustrated by acts of the county treasurer. This has been held to be the equivalent of payment and will discharge the lien. *Schultz v. Kolb, supra.*

The only case cited by the majority is *Nalley v. Hanson,* 11 Wn. (2d) 76, 118 P. (2d) 435 (1941), in which this court found, from clear, cogent, and convincing evidence, that the taxpayer went to the county treasurer's office for the purpose of then and there paying the taxes on several

parcels of real estate. He had a map and a list of names identifying the particular parcels on which he wished to pay taxes. The deputy treasurer did not have tax statements prepared and was too busy to furnish the information at that time. She later sent the taxpayer his tax statements, which he paid. It thereafter developed that there were two more tracts which were not included, although the taxpayer had requested statements regarding them.

The basis of this court's decision in favor of the taxpayer in the *Nalley* case is stated in the concluding portion thereof as follows:

"So, in the case at bar, the fact remains that respondent made an honest attempt to pay the taxes and was prevented from so doing, at the time, by the direct and immediate acts of the deputy.

"We are mindful of the rule, frequently stated by this court, that the evidence of any claimed invalidity of a tax foreclosure judgment or of any title based thereon must be clear, cogent, and convincing. *Schultz v. Kolb, supra.* We affirm that rule again. However, while the evidence in this case upon the material facts involved was adduced through the testimony of but two witnesses, Nalley and the deputy treasurer, it was all the evidence which the circumstances of the case would permit, for Nalley and the deputy treasurer were the only persons involved in the transaction. Moreover, the rule with reference to the character of evidence required is one for the guidance of the trier of the fact, and undoubtedly the trial judge was well acquainted with so familiar a rule, for in his memorandum opinion he stated that respondents were entitled to relief upon the facts, under the rule announced in the *Schultz* case.

"From our examination of Nalley's testimony as it appears in the statement of facts, we find it to be definite, clear, and cogent, and, manifestly, it convinced the trial court."

Considering the undisputed facts in the case at bar, can it be said that the Bornsteins (and their corporation) have shown by clear, cogent, and convincing evidence that they made a bona fide attempt to pay the taxes on government

lot 1 in section 31, and were prevented from doing so by the acts of the county officials?

I think not. The Bornsteins owned contiguous property, part of it in section 31 and part in section 30. They had in their possession two deeds describing the property which clearly showed what they owned. They received a notice from the county treasurer giving the amount of taxes due with respect to the part in section 30. No notice was received as to the part in section 31. Has a taxpayer a right to assume that one such notice covers all the property he owns, when parts of it are located in two contiguous sections? Can he disregard his own deeds and blindly insist that the public must suffer a loss in taxes under such circumstances?

If the taxpayer in this case had received *no* tax statement regarding either part of the property, then, under the rule in the *Glover* case, he clearly could not maintain this action. The fact that he received from the county treasurer one statement which covered the part in section 30, but made no reference to the part described in the deeds as "ALSO all of Government Lot 1, Section 31," etc., did not warrant his assumption that such a tax statement was complete. The facts of this case are essentially different from those in the *Nalley* case, on which the majority opinion is grounded.

The law imposes upon the taxpayer certain duties and responsibilities in such circumstances: (1) He must know what real property he owns; (2) he must presume that his property is taxable every year; (3) he must know that all taxes must be paid before delinquency to avoid interest and penalties; (4) he must know that, regardless of whether he receives a notice from the county treasurer, a lien for the amount of the current year's taxes is created against his property; and (5) he knows that if his taxes are delinquent for five years his property may be the subject of foreclosure proceedings. *Reese v. Thurston County*, 154 Wash. 617, 283 Pac. 170 (1929).

Here, the Bornsteins received a tax statement and paid it (without checking it), and now seek to escape the consequences of *their negligence* on the theory that they have

a right to rely on a tax statement which referred to *section 30 only* as covering *all* the property they owned in *both* section 30 and section 31.

Under the facts of this case, I am of the opinion that there is no clear, cogent, and convincing evidence that the Bornsteins made any bona fide effort to pay the tax on government lot 1, section 31, and that there is no legal ground for granting them relief. Their collateral attack on the tax foreclosure judgment should not be sustained on the undisputed facts of this case. *Schultz v. Kolb, supra.*

I believe that the following quotation from *McGuire v. Bean,* 151 Wash. 474, 276 Pac. 555 (1929), is applicable to this case:

"Like most cases of this character, there is here a certain element of hardship from which we would be glad to relieve, but to do so would unsettle long established rules and lead to uncertainty and difficulty in the collection of taxes which are the life blood of the state. . . ."

I would affirm the trial court's judgment.

WEAVER, C. J. and HILL, J., concur with DONWORTH, J.

February 4, 1960. Petition for rehearing denied.