[No. 6984. Decided December 3, 1907.]

MARY S. BULLOCK, *Appellant*, v. EDWIN B. WALLACE *et al.*, *Respondents.*[1]

VENDOR AND PURCHASER—BONA FIDE PURCHASE—NOTICE—RECORD—DEFECTIVE TAX TITLE. A recorded quitclaim deed to the owner from a tax title grantee, although the wife did not join therein, is sufficient to put upon inquiry grantees claiming to be *bona fide* purchasers through mesne conveyances from the tax title grantee, who inadvertently made the second deed, where inquiry would have disclosed that the quitclaim was made to rectify a mistake which rendered the tax title void.

TAXATION—TAX TITLE—VALIDITY—PAYMENT OF TAX—JUDGMENT—COLLATERAL ATTACK. Where taxes have in fact been paid by a nonresident owner, but a foreclosure for taxes resulted through the mistake of the county treasurer's office, a tax title secured by publication against a nonresident owner is void; and the same may be collaterally attacked under Laws 1897, p. 190, § 114, making the tax judgment conclusive in collateral proceedings "except where the tax or assessments have been paid."

SAME—RECOVERY OF LAND SOLD FOR TAXES—EJECTMENT—PLEADING. Bal. Code, § 5679, requiring the complaint in an action to recover lands sold for taxes to allege that the tax had been paid or tendered does not apply to an ordinary action of ejectment, where the plaintiff was ousted by one claiming under a void tax title which, under the law of 1897, was subject to collateral attack from the fact that the tax had already been paid.

EJECTMENT—JUDGMENT—IMPROVEMENTS. In ejectment the judgment as to improvements made and taxes paid by the defendant must conform to Laws 1903, p. 262.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 11, 1907, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action of ejectment. Reversed.

*Kerr & McCord*, for appellant.

*Charles P. Harris*, for respondents.

[1] Reported in 92 Pac. 675.

HADLEY, C. J.—This is an action in ejectment, the complaint containing the usual allegations in such cases. The defendants answered, alleging that they are the owners and entitled to the possession by virtue of being grantees, through mesne conveyances, of a tax title. At the trial evidence concerning the tax proceedings and sale was introduced by the defendants, and the plaintiff introduced evidence concerning her effort to pay the taxes, she claiming that the taxes were fully paid. The court found for the defendants, and entered judgment of dismissal, from which the plaintiff has appealed.

The material facts disclosed at the trial we find to be substantially as follows: The appellant was the owner of the land in the year 1891 and subsequent years up to and including the time of the tax foreclosure proceedings. For the years 1891 to 1897 inclusive, she paid the taxes upon the property continuously. She was the owner of lots 11 and 12, block 5, of Wasson's addition to Ravenna Park, Seattle. Through the mistake of her agent, she paid the taxes for the years 1898 and 1899 upon lots 10 and 11 instead of 11 and 12. She was not the owner of lot 10, and by the said mistake the taxes upon lot 12 were unpaid. She at all times resided in Lexington, Kentucky, and in May, 1901, she wrote to the treasurer of King county and asked for a full statement of the amount of her taxes. On the 28th day of May the treasurer replied to her letter and advised her that the total amount of taxes due, current and delinquent, including interest to July 1, 1901, was $3.85. She remitted that sum and the same was received in the office of the treasurer on the 8th day of July, 1901. Meantime, after the treasurer had forwarded the said tax statement to appellant, and on the 15th day of June, 1901, one Benton, through whom the respondents claim to have acquired title, commenced an action to foreclose a tax delinquency certificate upon said lot, issued by said treasurer on May 9, 1901. Service in the foreclosure proceedings was by publication, and appellant had no actual notice thereof.

A decree of foreclosure was entered on the 20th of August, 1901, and thereafter a tax deed was issued to said Benton.

At all times subsequent to the 8th day of July, the appellant had on hand with the county treasurer the sum of $3.85, paid to him for the purpose of liquidating the taxes, interest, and costs upon such lot. The treasurer failed to notify her of the pendency of the foreclosure proceedings, and failed to inform her that any additional sum of money was required to pay the taxes upon the property, including the costs and expenses of such foreclosure proceedings. No notice of any kind concerning such foreclosure proceedings was given to her until the month of December, 1901, at which time the treasurer wrote to her and stated that it was necessary for her to pay an additional sum of $7.05 for the accumulated interest and costs of the foreclosure proceeding, which sum she forwarded to the treasurer.

In the following month, January, 1902, after the sale of the property and the delivery of a tax deed therefor to Benton, the treasurer took the money, deposited with him by appellant in payment of taxes, interest, and costs, and delivered it to Benton and received from the latter a quitclaim deed for the property running to appellant. The treasurer took such course for the purpose of rectifying his own mistake. Benton was, at the time of making such deed, a married man, but his wife did not join in the execution thereof. The deed bore date December 23, 1901, and was regularly filed for record the next day. Thereafter, on the 8th day of October, 1902, Benton and wife executed a deed for the same property to Ida M. Sizer, and the latter and her husband, on March 15, 1904, made a deed therefor to the respondents in this action, who thereupon took possession of the lot and were in such possession when this action was commenced. Benton and wife executed the deed to Ida M. Sizer through an oversight.

Under the above facts the appellant claims that she paid her taxes, and that the tax sale conveyed no title. Upon the other hand, respondents claim that the proceedings were regu-

lar; that the tax title conveyed to Benton was a community one; that his quitclaim deed to appellant conveyed nothing because his wife failed to join, and that the subsequent deed of Benton and wife to respondents' grantors conveyed full title. Respondents claim that they were innocent purchasers having no actual knowledge of the facts about the attempted payment of taxes, and relying entirely upon the tax foreclosure proceedings. Benton's deed to appellant was, however, upon record when they received their deed. They were required to take notice of the existence of that deed for what it was worth. Upon its face it must have appeared to convey title, and it was certainly sufficient to put them upon inquiry as to its purpose. Such inquiry would doubtless have disclosed to them the above facts. Benton testified at the trial that the deed to respondents' grantors was inadvertently made, and an inquiry by respondents would no doubt have led them to that discovery, and they would thus have learned the facts about appellant's efforts to pay the taxes. However regular the tax proceedings may have been upon their face, we could not regard respondents in the light of entire innocence, even were they entitled to interpose such defense here. The existence upon record of the deed from the tax title grantee was in the nature of a danger signal warning respondents to look out for obstructions in the stream of title. They ignored the signal and steered ahead without regard to it. We do not mean to say that the deed from Benton to appellant conveyed actual title; but knowledge of its existence placed respondents in a position differing with regard to good faith from that of the ordinary purchaser in a tax proceeding record which is fair upon its face.

But however fair the tax record may have been, if the taxes were in fact paid, the foreclosure proceedings and the deed thereunder were void. The mere statement of facts, as hereinbefore set forth, we think is sufficient to show that appellant used every reasonable effort to pay her taxes, and that but for the mistake of the county treasurer's office the foreclosure pro-

ceedings would have been avoided. This fact was conceded by the treasurer and he endeavored to cure his mistake, believing that the short way to do it was for the tax foreclosure grantee to deed to the owner. Even then the appellant paid, and the tax purchaser received, the costs of a foreclosure that should not have been instituted.

"If the owner of land, or a party having an interest therein, in good faith applies to the proper officer for the purpose of paying the tax thereon, and payment is prevented by the mistake or fault of such officer, . . . the attempt to pay is considered, in most jurisdictions, as the legal equivalent of payment in so far as to discharge the lien and bar a sale for nonpayment." 27 Am. & Eng. Ency. Law (2d ed.), p. 755. See cases there cited from different jurisdictions.

In *Breisch v. Coxe*, 81 Pa. St. 336, 346, the court was dealing with an attempt to pay taxes, and observed as follows:

"It is an almost universal rule, which substitutes a tender for performance, when the tender is frustrated by the act of the party entitled to performance."

The facts, we think, require the holding that the foreclosure was unauthorized in law, that the sale and deed thereunder were void, and that appellant was not divested of her title thereby.

Respondents, however, contend that appellant's attack here upon the tax judgment and deed is collateral, and cannot for that reason be maintained. This court, in *Smith v. Jansen*, 43 Wash. 6, 85 Pac. 672, held that the owner who has paid his taxes may defeat a tax judgment in a collateral proceeding where the tax judgment was taken by default on constructive service. The decision was based upon the terms of § 114, Laws of 1897, page 190, which makes tax judgments conclusive evidence of their regularity in all collateral proceedings, "except in cases where the tax or assessments have been paid . . ." The judgment against appellant was taken by default and upon constructive service, which brings this case directly within the terms of the case cited.

It is also urged that the action is one to recover property sold for taxes, and that Bal. Code, § 5679 (P. C. § 8734), requires that the complaint in such actions must set forth that the tax has been paid or tendered, which this complaint does not do. Whatever may be said under the statute of the necessary contents of a complaint purporting to be an action to recover property sold for taxes, it does not apply here. The action is one of ordinary ejectment which appellant has the right to maintain, for the reason that she has at all times been the owner and entitled to the possession, and has been unlawfully ousted by respondents. Moreover the statute cited was passed in 1888, and if it can be said that it was intended to authorize attacks upon tax proceedings by direct attacks only, its effect has been nullified in that regard by the later statute of 1897, cited above, which expressly permits collateral attacks when the taxes have been paid.

Appellant alleged damages by way of rental value and also general damages, but she introduced no evidence upon the subject. Respondents also set up a claim under the statute, Laws of 1903, page 262, for the value of the improvements placed upon the property, and introduced some evidence concerning the same. The evidence showed certain improvements in the way of clearing, fencing, the digging of a well, and the construction of a windmill, tower and pump. A small amount of taxes was also shown to have been paid by respondents. The court made no findings as to the value of the improvements, and the evidence is such that we are unwilling to make findings upon that subject. The largest item of value of the improvements is the well, together with the windmill and tower, and it was testified that the center of the windmill, the plunger, is exactly on the line between the lot in question and the adjoining lot 13, the latter not owned by the appellant. Respondents dispute this, and claim that the improvement is wholly upon lot 12. But the conflict in the testimony is such that we think a finding upon the subject can only be properly made under the evidence of surveyors who have made accurate

test measurements.    The location of the well with its tower and windmill is a material element in determining the value, if any, which it may be to appellant's lot.    As the judgment must be reversed for reasons heretofore stated, we think the cause should be remanded for the taking of testimony upon the subject of the improvements ; and after ascertaining their value, the court should enter its judgment for appellant for the recovery of the land, and make its judgment with reference to the improvements and taxes paid conform to the statute of 1903 aforesaid.

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

RUDKIN, FULLERTON, MOUNT, CROW, ROOT, and DUNBAR, JJ., concur.