[Nos. 23360, 23361. *En Banc.* February 19, 1932.]

KITSAP COUNTY SCHOOL DISTRICT No. 100, *Respondent,* v. THE CITY OF BREMERTON *et al., Appellants.*

GWEN VAUGHN, *Respondent,* v. THE CITY OF BREMER-TON *et al., Appellants.*[1]

*H. E. Gorman,* for appellants.

*Hugo E. Oswald, Maurice W. Orth,* and *J. W. Bryan, Jr.,* for respondent Kitsap County School District No. 100.

*Chas. W. Johnson* and *F. W. Moore,* for respondent Gwen Vaughn.

MITCHELL, J.—David Vaughn, prior to his marriage in 1907, was a resident of Walla Walla, Washington,

[1]Reported in 8 P. (2d) 417.

and acquired the real property involved in these actions. The property was situated in the city of Charleston, Washington, which city was consolidated with and became a part of Bremerton in December, 1927.

In 1920, the city of Charleston duly organized local improvement district No. 63 for the purpose of grading streets and laying sidewalks within the district, which included the real property involved in these actions. The property was improved, bonds issued therefor, and assessments levied which were payable in ten annual installments, all such charges on the respective lots or parcels of land becoming a lien thereon from the time the assessment roll was placed with the city treasurer for collection. Rem. Comp. Stat., § 9372.

David Vaughn paid the first and second installments in 1922 and 1924. He died in December, 1924, and, by the terms of his will, his widow, Gwen Vaughn, became the owner of an undivided part of the real estate here involved; and later, by a conveyance from another devisee, she became the owner of the remainder of the real estate.

The public records of the office of the treasurer of the city of Charleston were delivered into the possession of the treasurer of the city of Bremerton upon the consolidation of the cities.

Thereafter, in the year 1929, during the pendency of negotiations for the sale by Mrs. Vaughn of a portion of the real property to Kitsap county school district No. 100, a municipal corporation, and while other negotiations were pending for the sale by Mrs. Vaughn of the remainder of the real estate to another purchaser, the secretary of the school district called on the then treasurer of Bremerton to have him "look up the assessments" on the property the school district

was proposing to buy, at which time the treasurer was furnished a plat and description of the property. The treasurer made an examination of the books, and wrote on the plat furnished by the school district, "All assessments paid on this property as far as I can find," and delivered it to the secretary of the school district.

About that time, the duly authorized agent of Mrs. Vaughn called on the then treasurer of Bremerton to ascertain the amount, if any, of taxes and unpaid assessments against her property. It appears that the prospective purchaser of the property other than that the school district wanted, also became interested in ascertaining the amount, if any, of assessments against the property. The city treasurer signed and delivered on account thereof, two written instruments, one a letter dated May 31, 1929, to Mrs. Vaughn's agent, as follows:

"With reference to your request for taxes on portion of NW¼SW¼SW¼ Sec 14 Twp 24 N Rg 1 E. W. M., I am forwarding your request for segregation of taxes to the county treasurer, who has these records.

"With regard to city assessments, I can find none due on this property, the rolls showing at this time all assessments paid."

The other instrument, dated July 27, 1929, was as follows:

"To Whom it May Concern: This Will Certify that in accordance with city assessment rolls in my hands there are no payments due or to become due upon the following described property, to-wit: NW¼ SW¼SW¼ Sec. 14 Twp. 24 N Rge 1- E. W. M. ex. a tract in SW cor. of said tract 100 feet East and West on Burwell Ave. 310.93 ft. N. & S."

The school district purchased and received a conveyance from Mrs. Vaughn of a part of the property,

while the purchaser of the remainder entered into a real estate contract with her for it.

Thereafter, these suits were brought against the city and its treasurer, each plaintiff alleging, in substance, that the city of Bremerton had instituted foreclosure proceedings to collect the installments that became delinquent in January of the years 1925 and 1926; that such action had proceeded to judgment of foreclosure of such assessment liens, with directions that an order of sale issue, directing the city treasurer to sell such portions of the property as might be necessary; that such order of sale had issued, pursuant to which the treasurer had advertised to sell and would sell unless restrained. It was further alleged in each of these suits that all local improvement assessments had been paid. Each plaintiff prayed that the city be perpetually enjoined from all further attempt to collect such assessments. The defendants answered and, among other things, denied that the assessments, other than the two first ones, had been paid.

On the trial, a judgment was entered in each case that defendant has no lien on the real property involved on account of the assessments in local improvement district No. 63, for the reason that, by operation of law, all assessments heretofore levied had been paid; and further ordered and adjudged that defendants be perpetually enjoined from all further attempt to enforce collection or claiming any lien on account of any such local improvement assessments. The defendants have appealed in each case.

■■ The respondents defend on the appeal, upon the theory that the judgments were sustained by the facts, under what is known as the "frustration of officer" rule adopted and frequently enforced in this state. *Bullock v. Wallace*, 47 Wash. 690, 92 Pac. 675;

*Taylor v. Debritz,* 48 Wash. 373, 93 Pac. 528; *Loving v. McPhail,* 48 Wash. 113, 92 Pac. 944; *Gleason v. Owens,* 53 Wash. 483, 102 Pac. 425, 132 Am. St. 1087; *Blinn v. Grindle,* 58 Wash. 679, 109 Pac. 122; *Brewer v. Howard,* 59 Wash. 580, 110 Pac. 384; *Puget Sound National Bank v. Biswanger,* 59 Wash. 134, 109 Pac. 327.

*Taylor v. Debritz,* 48 Wash. 373, 93 Pac. 528, was a typical case of the kind. In it, the trial court set aside a tax deed based on the foreclosure of a delinquency certificate for the general taxes of 1888. The opinion of the court says that the testimony showed and the trial court found:

"That after purchasing said land, beginning with the year 1889 and each and every year thereafter, plaintiff requested from the proper collecting officers of King county statements of the taxes due as well as the taxes delinquent against said land. That each and every year since the purchase of said land, beginning with the year 1889, the proper collecting officers of King county asserted and represented to the plaintiff by written and verbal statement that there were no taxes unpaid or delinquent against said land, except such taxes as this plaintiff had theretofore paid. That this plaintiff has paid the taxes on said land beginning with the taxes assessed for the year 1889 down to and including the taxes assessed for the year 1906."

with respect to which this court said:

"Considering a similar state of facts in the recent case of *Bullock v. Wallace,* 47 Wash. 690, 92 Pac. 675, this court quoted the following from the 27 Am. & Eng. Ency. Law (2d ed.), p. 755:

" 'If the owner of land, or a party having an interest therein, in good faith applies to the proper officer for the purpose of paying the tax thereon, and payment is prevented by the mistake or fault of such officer, . . . the attempt to pay is considered, in most jur-

isdictions, as the legal equivalent of payment in so far as to discharge the lien and bar a sale for payment;'
and said:

"'The facts, we think, require the holding that the foreclosure was unauthorized in law, that the sale and deed thereunder were void, and that appellant was not divested of her title thereby.'"

The case of *Loving v. McPhail*, 48 Wash. 113, 92 Pac. 944, was then referred to, and the conclusion reached by the court was:

"On the authority of the above cases the judgment in this case must be affirmed, and it is so ordered."

Counsel for the appellant admits the rule, but contends that it applies only to cases of general taxes, and that the rule and the reason for it do not apply in local assessment cases. In this case, it may be assumed, as respondents contend, but we do not so decide, that the rule is as applicable in this kind of a case as in general tax cases; still there remains the important question whether the rule is applicable under the particular circumstances of this case.

The rule speaks of one who "in good faith applies to the *proper officer* for the purpose of paying the tax." So that, in the case of a special assessment in a local improvement district, the application on the part of a land owner to pay must be made to the city clerk, city attorney, city treasurer, chief of police, or other officer, as the case may be, *that the law charges with the duty and to whom is given the power or authority to collect the assessment* at the time the application is made.

Certain statutes are involved, viz: Laws of 1921, p. 241, § 1, the same being Rem. Comp. Stat., § 9376, amending Laws of 1911, p. 456, § 24, which, as amended, reads in part as follows:

"All local assessments becoming a lien upon any property in any city or town *after* this act shall become effective, shall be collected by the treasurer of such city or town, and all such liens shall be enforced in the manner herein prescribed: Provided, that in cities and towns other than cities of the first class, delinquent assessments, or delinquent installments thereof, shall be certified to the treasurer of the county in which such city or town is situate and by him entered upon the general tax-rolls and collected as other general taxes are collected: *Provided, that after such certification any such city or town shall have the right to proceed in its own name to collect or enforce any such delinquent assessment or delinquent installment.* The county treasurer shall remit to the city treasurer on the tenth of each month all sums so collected. All local assessments becoming a lien upon any property in any such city or town *prior* to the date this act shall become effective, shall be collected and such liens enforced in accordance with the laws in force and effect prior to the taking effect of this act: Provided, that in the enforcement of any such liens, any city or town may proceed under the provisions of this act, unless such proceeding shall have been already commenced."

There was some further amendment of the law by Laws of 1927, p. 658, which, however, seems to have no important bearing on this case.

In the amendment of 1921, above set out, the language we italicize constitutes a change in the law of 1911 which is strongly relied on by the respondents. Under the act of 1911, or the amendment of 1921, the city treasurer or the county treasurer, according to the circumstances at a given time, was the proper officer to apply to for the purpose of paying special assessments in local improvement districts. The statutes say the assessments shall be collected by the city treasurer, "and all such liens shall be *enforced* in the manner herein provided," with the proviso

" . . . that in cities and towns other than cities of the first class *delinquent* assessments or *delinquent* installments thereof shall be certified to the treasurer of the county in which such city or town is situate and by him entered upon the general tax roll and collected as other general taxes are collected."

That is, prior to delinquency, the city treasurer is the statutory collector, afterwards the county treasurer, unless the liens are to be *enforced* in the manner prescribed by the act. It may be stated that Bremerton is not a city of the first class.

Counsel for respondents stress that language in the amendment emphasized by us that, after the certification of the delinquent installments to the county treasurer, the "city or town shall have the right to proceed in its own name to collect or enforce any such delinquent installment," and, featuring especially the word "collect," contend that the city treasurer may still collect.

We do not think so. The amendment became a part of the act of 1911, which act is a most comprehensive one on the subject of local improvements. The act generally provides several ways, the details of which need not be set out here, for enforcing the collection of delinquent assessments, by ordinance and sale, foreclosure of certificates of delinquency, and actions in court by bond holders; but through it all there is reserved to the city wherein the local improvement district is situate the right and power to *enforce* collection of the assessments.

The amendment of 1921 speaks of the right of the city to proceed in its own name to *collect or enforce* delinquent assessments and installments. The legislature that enacted the amendment was not a stranger to that text; nor are we left in doubt about it, nor the meaning of those words, when we consider the fact

that, in Laws of 1911, p. 463, § 34, Rem. Comp. Stat., § 9386, of which act the amendment became a part, it is provided:

"Any city or town may proceed with the *collection or enforcement* of any delinquent assessment, or delinquent installment, whether the same became a lien after this act shall become effective, or prior thereto, by proceedings in court therefor in an action brought in its own name in the superior court in the county in which such city or town is situate." (Italics ours.)

This is precisely what the city was doing when the present injunctive suits were brought, maintaining an action in its own name for the collection or enforcement of delinquent installments. Manifestly, that is what the amendment means. It was not intended to continue or reestablish the city treasurer as collector of delinquent assessments or installments after they had been certified to the county treasurer as required by the law.

The applications to the city treasurer in 1929, that resulted in the written representations by him upon which the respondents here rely as constituting payment and discharging the liens of the local improvement assessments, were made at a time the city treasurer was not the statutory collector of the assessments, and hence those applications to, and the written representations given by, the city treasurer were ineffective for the operation of the "frustration of officer" rule upon which these judgments rest.

Reversed, with directions to dismiss the injunction proceedings in each case.

PARKER, MAIN, MILLARD, BEELER, BEALS, and HERMAN, JJ., concur.

TOLMAN, C. J., dissents.