[No. 24525. *En Banc.* December 18, 1933.]

L. ESTELLA RICHARDS, *Respondent,* v. PAUL C. LAWING
et al., *Defendants,* WHITE & BOLLARD, INC.,
*Appellant.*[1]

[1]Reported in 27 P. (2d) 730.

*James Tynan (Roberts, Skeel & Holman* and *Tyre H. Hollander,* of counsel), for appellant.

*H. Sylvester Garvin* and *Stewart N. Lombard,* for respondent.

MITCHELL, J.—Claude W. Estes and wife owned a vacant lot in Seattle. They executed a warranty deed dated August 28, 1929, purporting to convey the lot to Paul C. Lawing. Under the same date, Lawing and wife made and delivered to Claude W. Estes their negotiable promissory note in the sum of eighteen hundred dollars, and secured the payment of it by a mortgage on the lot, dated and delivered on the same date.

It appears that the deed from Estes and wife to Lawing was neither delivered nor recorded at the date it was executed, but was held by Estes with the note and mortgage given to him by Lawing and wife until after negotiations, in the name of Lawing and wife, resulted in a loan from White & Bollard, Inc., for which, on September 17, 1929, White & Bollard, Inc., took the negotiable note of Lawing and wife in the sum of sixty-five hundred dollars, secured by a mortgage on the lot executed and delivered by Lawing and wife at that time. Nor is there any allegation or proof that Lawing and wife were given possession of the lot prior to the execution and delivery of their mortgage to White & Bollard, Inc.

In the written application, dated September 9, 1929, for the loan to Lawing of sixty-five hundred dollars, the loan was described as a first mortgage loan. It was to be used in the construction of a building on the lot. The mortgage note, signed by Lawing and wife, is described as a first mortgage note.

After the application for the loan of sixty-five hundred dollars was taken, it with the note and mortgage

by Lawing and wife on the lot to secure it were held by White & Bollard, Inc., for further consideration to complete the transaction. Mr. Armstrong, the representative of White & Bollard, Inc., who had charge of making the loan, upon referring to the transaction and the mortgage given by Lawing and wife to White & Bollard, Inc., testified as follows:

"Q. What did you do with this mortgage after it was executed, Mr. Armstrong? A. The mortgage was held at my desk until the deed was brought into the office. Q. The deed from? A. Mr. Estes. Q. To the defendant Lawing? A. That is right. Q. And when the deed was delivered to you what then did you do? A. Well, the deed was brought in accompanied by the mortgage and note. Mr. Estes brought the papers in, of course. Q. What mortgage and note do you refer to? A. The mortgage and note that was made by Lawing and wife to Estes. . . . A. The mortgage from Lawing to Estes was brought into the office together with the deed for the purpose of recording."

This testimony was not disputed.

Thereafter, under date of September 17, 1929, the note and mortgage from Lawing and wife to White & Bollard, Inc., were signed and delivered. White & Bollard, Inc., then having the deed from Estes and wife to Lawing and the two mortgages from Lawing and wife, filed and had them recorded in the county auditor's office, the mortgage to White & Bollard, Inc., and the Estes deed to Lawing both prior to the mortgage from Lawing and wife to Estes, as the parties had agreed.

On September 21, 1929, four days after the three instruments were recorded, Estes entered into a "priority agreement," which, upon describing the real property, recites that, in consideration of the premises with respect to the two several mortgages executed by Lawing and wife, and in consideration of the sum

of one dollar, Estes agreed that his mortgage from Lawing and wife, under date of August 28, 1929, should be junior and inferior to the mortgage Lawing and wife gave to White & Bollard, Inc., on September 17, 1929. On the day the priority agreement was executed it was recorded in the office of the county auditor, it being entitled to be put of record. Laws 1927, p. 670, § 1; Rem. Rev. Stat., § 10596-1. It appears that no actual monetary consideration passed to Estes at the time he executed the priority agreement.

Thereafter, from time to time, White & Bollard, Inc., made advances, totaling about six thousand dollars, to Lawing upon the sixty-five hundred dollar mortgage.

In November, 1929, some two months after Estes completed his deed of conveyance by delivery of it to be recorded on September 17, 1929, and after the recording of the two mortgages in the order mentioned, Estes endorsed and transferred to the Securities Discount Corporation the note of the Lawings for eighteen hundred dollars, and also assigned to it the mortgage given by the Lawings to secure the payment of that note. In December, 1929, the Securities Discount Corporation transferred the note and mortgage to L. Estella Richards, who did not have actual knowledge of the existence of the mortgage given by Lawing and wife to White & Bollard, Inc.; nor did she have actual knowledge that, on September 21, 1929, Estes had given the "priority agreement." When she purchased the note and mortgage, they were in good standing as they appeared upon their faces.

This action was brought by L. Estella Richards to recover judgment for the balance due on the eighteen hundred dollar note and to foreclose the mortgage securing it, as a first mortgage lien on the real property. Defendant White & Bollard, Inc., filed a cross-complaint to recover judgment for the amount due it, and

to foreclose the mortgage in its favor as a first mortgage on the real estate. The judgment was in favor of the plaintiff. White & Bollard, Inc., has appealed. The controlling question is with respect to the priority of the rights of the parties under their respective mortgages.

On behalf of the respondent, it is argued that " . . . there is no evidence in the record to show that either Estes or Lawing agreed that the instruments should be recorded in the order in which they were filed."

In the first place, the clear inference from all the evidence considering the relation and circumstances of the parties and their evident plans with respect to the property, justify the conclusion that the instruments were filed in the order agreed upon.

In the second place, counsel overlooks the pleading to the effect that, upon an order granting respondent's motion to make appellant's cross-complaint more definite and certain, the appellant alleged, in substance, that the Lawing mortgage to Estes was intended to be a second mortgage and inferior to one to be given to provide funds for the erection of buildings on the premises; that Lawing, about September 9, 1929, applied to White & Bollard, Inc., for a mortgage loan to provide such funds; that White & Bollard, Inc., agreed to make the loan if given a first lien on the premises; that this arrangement was well known to Estes, who agreed thereto; that, in pursuance thereof, the deed from Estes and wife to Lawing and the eighteen hundred dollar mortgage back to Estes were delivered to White & Bollard, Inc., by Estes, with instructions, in substance, to record the deed and mortgages, and that, of the two mortgages, the one to White & Bollard, Inc., should be filed and recorded first, and that said instructions were carried out. These material allega-

tions were not controverted by respondent's answer to the cross-complaint, hence required no proof.

"Every material allegation of the complaint not controverted by the answer, . . . shall, for the purpose of action, be taken as true." Rem. Rev. Stat., § 297.

Down to and including the recording of the three instruments on September 17, 1929, the only persons interested in the enterprise or who had any interest whatever in the real property or the notes and mortgages were Estes and his wife, Lawing and his wife, and White & Bollard, Inc.

Prior to filing the deed in the county auditor's office, Lawing did not have, nor does it appear that he was entitled to have, possession of the deed. It is the general rule that it is essential to the validity of a deed that there should be a delivery of the instrument. *Coe v. Wormell*, 88 Wash. 119, 152 Pac. 716, Ann. Cas. 1917C, 679; 18 C. J., Deeds, p. 196, § 94.

Lawing and wife were interested in the matter because they needed money to improve the property, and gave the note and mortgage to the appellant in furtherance of the common scheme. This is further evidenced by the fact that a large amount of money was paid to Lawing and used in the construction of buildings upon the property. Appellant, of course, was interested because it was lending sixty-five hundred dollars on condition, according to the common understanding, that it should have a first mortgage lien on the property. Appellant filed its mortgage from Lawing and wife of record; which, carrying out the plan of all the parties, immediately became a first lien on the real property upon the immediate filing thereafter of the deed to the property from Estes and wife to Lawing, which filing constituted a delivery of the deed to Lawing, until which time the title to the real prop-

erty remained in Estes. The filing thereafter of the mortgage from Lawing and wife to Estes became, of course, a second lien on the real estate. Such is the manifest purpose and effect of our recording statute. Rem. Rev. Stat., § 10596-1 *et seq.*

There was nothing uncommon about this method of financing the sale and improvement of the property, nor at variance with the obvious purpose of all the parties.

The "priority agreement," after recording the deed and mortgage, was a circumstance corroborative of the understanding of the parties, and, upon being recorded, gave constructive notice to parties dealing upon the faith of the real property described.

Respondent calls attention to the general rule that a mortgagee with knowledge of an earlier, though unrecorded, mortgage, takes subject thereto, and will not be permitted, by placing his mortgage first of record, to gain priority over the earlier lien, citing *Tordello v. Ellison,* 132 Wash. 20, 231 Pac. 9. That rule is the common one against one who holds and records a mortgage which, in fact, is a second mortgage. In the present case, appellant's mortgage was, and by all parties was intended to be, a first mortgage.

Going further and considering the case from the standpoint of the respondent as a third party, the respondent contends that, being a purchaser in good faith of a negotiable promissory note, the payment of which was secured by the eighteen hundred dollar mortgage, the note imports its negotiable character to the mortgage, and that the doctrine of constructive notice imparted by the public records is not applicable. The rule relied on in this respect by the respondent is not applicable here.

The case of *American Savings Bank & Trust Co. v. Helgesen,* 64 Wash. 54, 116 Pac. 837, Ann. Cas. 1913A,

390, is cited by counsel. That was not a case of priority of mortgages. Erickson and wife, the owners of real property, gave notes secured by a mortgage on the land. The notes and mortgage were assigned to the bank, and thereafter the mortgage was recorded in the auditor's office. Subsequently, Helgesen procured judgment against Erickson, and on execution sale became the purchaser of the Erickson land. Thereafter, in a suit by the bank on the notes to foreclose the mortgage, Helgesen alleged in his answer that the notes were usurious and fraudulent, and that the bank did not acquire them in good faith. The holding was to the contrary on the question of the bank's good faith in taking the notes. It was further insisted in the case that, though the notes, because of their negotiable character, be freed from infirmities by the transfer, the mortgage, nevertheless, was subject to all the defenses it would be in the hands of the original payee of the notes. It was in this connection that the court stated the rule upon which reliance is now had by the respondent, quoting from 1 Daniel on Negotiable Instruments (5th ed.), § 834, as follows:

" . . . that if a mortgage is given to secure a negotiable note, and both the mortgage and the note are transferred before maturity to a *bona fide* indorsee, such indorsee takes the benefit of the mortgage as well as of the note, clear of any equities between the original parties."

But that consideration in no way embraces the question of an outstanding prior lien on the land at the origin of the instrument under which the assignee claims, nor of constructive notice under the recording acts with respect to an outstanding prior lien.

Respondent further cites certain Oklahoma cases to the same effect, several of which may be noticed. *Foster v. Augustana College & Theological Seminary*, 92

Okla. 96, 218 Pac. 335, 37 A. L. R. 854, was not a contest between mortgagees or lien holders on the subject of priority, but, as stated in the opinion, it "involves the ownership and right of possession of a promissory note and real estate mortgage securing the same;" that is, the good faith of an assignee or holder of a note and mortgage was the only question in that case.

*Jenkins v. Johnson,* 116 Okla. 17, 243 Pac. 178, is to the same effect. It involved only the question of the good faith of an assignee in taking a note secured by a mortgage as against subsequent purchasers of the real estate described in the mortgage. Also to the same effect is the case of *Landauer v. Sublett,* 126 Okla. 185, 259 Pac. 234, in which, while two mortgage foreclosures were involved, there was no question of priority of the mortgages presented. The controversy in the case arose over the right of the holder of the second mortgage to a decree of foreclosure at all, because of alleged lack of good faith on the part of the holder in taking the note and mortgage.

The authorities thus relied on by respondent are not applicable here. Her good faith in taking the Lawing note and mortgage assigned by Estes is neither disputed nor questioned, but that does not make a first mortgage of an instrument that was not, and never was intended to be, a first mortgage. The mortgage held by her was a second mortgage in fact, and in these proceedings is entitled to no higher rank.

The judgment appealed from is reversed, and the cause remanded with directions to enter a decree declaring the mortgage held by the appellant to be a first mortgage and superior to the one held by the respondent, and to direct foreclosure accordingly.

ALL CONCUR.