[No. 25535.   *En Banc.*   October 10, 1935.]

BREMERTON CREAMERY & PRODUCE COMPANY *et al., Appellants,* v. T. C. ELLIOTT, *Respondent and Cross-appellant.*[1]

[1]Reported in 50 P. (2d) 48.

*F. W. Moore* and *Tucker & Tucker* (*Howard N. Stinson,* of counsel), for appellants.

*Robert B. Walkinshaw,* for respondent and cross-appellant.

BEALS, J.—The late David Vaughn, then a single man, during the year 1906, purchased a tract of real estate in Kitsap county, a portion of that tract being the subject matter of this action. Subsequently, Mr. Vaughn married, and during the year 1920, he, together with Gwen Vaughn, his wife, deeded the property to a corporation, taking in his own name a mortgage on the property sold for a portion of the purchase price. Approximately a year later, Mr. Vaughn foreclosed this mortgage, purchased the

property at the sheriff's sale, and in due time re-ceived, in his own name, a sheriff's deed.

October 8, 1924, Mr. Vaughn executed a nonintervention will, describing a large amount of real estate, including the Kitsap county tract, then standing in his name, as his separate property, designating H. H. Marshall as executor, with instructions to convert the property into cash and divide the proceeds equally between the testator's wife, Gwen Vaughn, and his sister, Mary Vaughn. The will further provided that, if Mrs. Vaughn endeavored to establish her right to a community interest in any portion of the estate, she should take nothing under the will.

Mr. Vaughn died December 8, 1924. Shortly thereafter, his will was admitted to probate by the superior court for Walla Walla county, where Mr. Vaughn had always resided, a decree of solvency was entered, and, Mr. Marshall having qualified as executor, the administration of the estate proceeded in an orderly manner.

T. C. Elliott, the defendant in this action, during the month of April, 1926, became the owner of a five thousand dollar note, executed by Mrs. Vaughn more than a year after her husband's death. This note not being paid when due, Mr. Elliott brought suit thereon. In connection with this action, under date January 29, 1927, and while Mr. Vaughn's estate was still in course of probate, Gwen Vaughn stipulated in writing for the settlement of her indebtedness and, pursuant to the stipulation, signed an order on Mr. Marshall, as executor and trustee under her late husband's will, providing for the payment to Mr. Elliott, out of the estate, of the amount Mrs. Vaughn owed him. This stipulation, which was accepted in writing by Mr. Marshall, further provided that, if the estate was not converted into cash but

distributed in kind, such distribution should not be made until the amount which Mrs. Vaughn owed Mr. Elliott had been paid or satisfactory arrangements made for Mr. Elliott's protection. As part of this agreement, Mrs. Vaughn delivered to Mr. Elliott bonds of the face value of five thousand dollars, issued by Walla Walla Valley Hospital Association, which it was agreed Mr. Elliott should hold as security.

Only a portion of the property belonging to the Vaughn estate was sold by the trustee, and July 18, 1927, it was agreed by and between the executor and trustee and Mrs. Vaughn that the remainder of the estate should be distributed in kind to the persons entitled to receive the same. Mary Vaughn accepted the result of this agreement, according to the terms of which the Kitsap county property was to be distributed to Gwen Vaughn. The executor filed a petition for distribution, and, after due proceedings had, a decree was entered, bearing date December 4, 1927, by the terms of which the Kitsap county land and other property was distributed to Gwen Vaughn. This decree, *inter alia,* recited

"That the stipulation entered into by H. H. Marshall, as executor of said will on behalf of said estate and on behalf of Mary Vaughn, and by Gwen Vaughn, dated the 18th day of July, 1927, and filed in this cause, be and the same is hereby approved in all respects;"

and further:

"It is further ordered that this distribution as to Gwen Vaughn is made subject to a stipulation and assignment heretofore entered into between the said Gwen Vaughn and one T. C. Elliott, and that all property, both real and personal, hereby decreed to Gwen Vaughn, be, and it hereby is, subjected to a lien in favor of T. C. Elliott as security for the money due said T. C. Elliott under the stipulation and order heretofore filed herein."

Mary Vaughn, by deed dated April 30, 1928, quit-claimed to Gwen Vaughn the Kitsap county property, the grantor in that deed being described as "Mary Vaughn, a spinster, devisee under the will of David Vaughn, deceased." This deed was filed for record in the office of the auditor of Kitsap county May 4, 1928. No copy of the decree of distribution was ever filed or recorded in Kitsap county.

During the spring of 1929, the plaintiff herein, Bremerton Creamery & Produce Co., a corporation (hereinafter referred to as the Creamery Co.), entered into negotiations with Mrs. Vaughn for the purchase of the portion of the Kitsap county land which Mr. Vaughn had owned which is the subject matter of this action. These negotiations culminated in a contract dated July 15, 1929, whereby Mrs. Vaughn, described therein as "Gwen Vaughn, a widow," agreed to sell the property to the Creamery Co., which was to pay the purchase price, amounting to six thousand dollars, within four years. It was later discovered that the property was subject to certain local assessments levied by the city of Bremerton, and, after an unsuccessful attempt to have these assessments set aside (*Vaughn v. Bremerton,* 166 Wash. 661, 8 P. (2d) 417), Mrs. Vaughn conveyed the property to the Creamery Co. by warranty deed, the Creamery Co. later agreeing, as part of the purchase price, to pay the assessments.

Meanwhile, the purchaser platted the property and sold portions thereof to different parties, who were later named as plaintiffs in this action.

In the course of time, it transpired that the bonds which Mrs. Vaughn had delivered to Mr. Elliott as primary security for the payment of her note had become worthless, and Mr. Elliott became concerned about the rights secured to him under the decree of

distribution in the David Vaughn estate. He realized some money from the sale of a portion of the Kitsap county land, with which we are not here interested, and asserted a claim against the land which had been conveyed to the Creamery Co.

This company demanded of Mr. Elliott that he release its land from all claim on his part and, upon his refusal to do so, instituted this action, seeking to quiet its title under the deed from Mrs. Vaughn as against the lien claimed by Mr. Elliott. The Creamery Co. also demanded damages in a considerable amount, claiming that it had been injured by the assertion of Mr. Elliott's claim against the land. Mr. Elliott filed a cross-complaint, setting up his alleged lien and asking that the same be foreclosed. The Creamery Co. also pleaded, as a set-off against Mr. Elliott's claim, if the same should be allowed, the amount of the assessments against the property which it had paid, and asked to be subrogated to the rights of the city of Bremerton in connection with these assessments. It also pleaded the payment by it of certain taxes and the expenditure of a further sum in improving the property.

The plaintiffs named in the action other than the Creamery Co. are persons to whom that company had sold portions of the land, and, the interest of those persons being identical with the interest of the Creamery Co., the case will be considered as though the Creamery Co. were the sole plaintiff.

The action was tried to the court and resulted in a decree in defendant's favor foreclosing his lien for something less than $1,700, the trial court having given plaintiff credit for the amount of assessments paid by it and some other items. From this judgment, plaintiff has appealed, contending that defendant's lien should have been entirely disallowed, and

that the trial court erred in striking from its complaint its claim for damages. Defendant has cross-appealed from the portion of the decree allowing plaintiff a credit in an amount equal to the assessments which it had paid out of the purchase price which it had agreed to pay Mrs. Vaughn for the property. For convenience, we shall, throughout this opinion, refer to the parties as plaintiff and defendant.

It is not contended that plaintiff had any actual knowledge of defendant's claim or of the provisions in the decree of distribution in the Vaughn estate awarding defendant a lien upon the property distributed to Mrs. Vaughn. Plaintiff, of course, admits that it is bound by the record, as disclosed by the offices of the auditor and clerk of Kitsap county. Defendant contends that these records disclosed sufficient data to put plaintiff upon inquiry as to the title of its grantor, Gwen Vaughn, and contends that plaintiff took title to the real property in question impressed with defendant's lien thereon, in accordance with the decree of distribution.

Plaintiff argues that, at the time of its purchase, the records in Kitsap county disclosed nothing which put it on notice as to the rights of any third party in or to the property in question, and that, defendant having failed to file a certified copy of the decree of distribution in the office of the auditor of Kitsap county, it purchased the property from Mrs. Vaughn free and clear of any claim on the part of defendant.

Rem. Rev. Stat., §§ 10596-1 and 10596-2 [P. C. §§ 1914-1 and 1914-2], read as follows:

"§ 10596-1. (1) The term 'real property' as used in this act includes lands, tenements and hereditaments and chattels real and mortgage liens thereon except a leasehold for a term not exceeding two years.

"(2) The term 'purchaser' includes every person to whom any estate or interest in real property is conveyed for a valuable consideration and every assignee of a mortgage, lease or other conditional estate.

"(3) The term 'conveyance' includes every written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned or by which the title to any real property may be affected, including an instrument in execution of a power, although the power be one of revocation only, and an instrument releasing in whole or in part, postponing or subordinating a mortgage or other lien; except a will, a lease for a term of not exceeding two years, an executory contract for the sale or purchase of lands, and an instrument granting a power to convey real property as the agent or attorney for the owner of the property. 'To convey' is to execute a 'conveyance' as defined in this subdivision.

"(4) The term 'recording officer' means the county auditor of the county."

"§ 10596-2. A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record."

These sections became effective June 8, 1927, and with others, replace Rem. Comp. Stat., § 10596.

Rem. Rev. Stat., § 10605 [P. C. § 1643], which has been in effect for many years, reads as follows:

"The auditor must file and record, with the record of deeds, grants, and transfers, certified copies of final judgments or decrees partitioning or affecting the title

or possession of real property, any part of which is situated in the county of which he is recorder. Every such certified copy or partition, from the time of filing the same with the auditor for record, imparts notice to all persons of the contents thereof, and subsequent purchasers, mortgagees, and lienholders, purchase and take with like notice and effect as if such copy or decree was a duly recorded deed, grant, or transfer.''

Plaintiff contends that one or other of these sections applies to defendant's claim under the decree of distribution and requires that the claim be placed of record in the office of the auditor of Kitsap county as a basis for the assertion by defendant, as against plaintiff, of any lien against the property distributed to Mrs. Vaughn.

Defendant argues that, as recording statutes are of comparatively recent origin, the court should not give to them undue weight or extend the application thereof to cover cases which do not clearly fall within their scope. It may be assumed that one buying real estate is an innocent purchaser thereof

'' . . . within the meaning of the statute, unless he had actual knowledge of the outstanding deed or notice sufficient to put him on inquiry.'' *Rehm v. Reilly,* 161 Wash. 418, 297 Pac. 147, 74 A. L. R. 350.

Plaintiff contends that the decree of distribution was actually or in effect a judgment in Mr. Elliott's favor, and that defendant should have followed the statutory procedure for making this judgment a lien upon real estate in a county other than that in which the judgment was rendered. Defendant contends that the decree simply imposed a lien upon the real estate distributed to Mrs. Vaughn, and that plaintiff was bound to trace its grantor's title back to its source, and that, as was said by the supreme court of Tennessee, in the case of *Martin v. Neblett,* 86 Tenn. 383, 7 S. W. 123:

"The case is narrowed down to the single question of the effect of the lien retained in the decree. . . .

"This brings us to the question, What is the effect of a lien retained in a decree of a court of record for the payment of purchase-money of land sold by decree of said court as against persons holding under such a decree, mediately or immediately?

"We hold that it is the same as in the case of a lien retained in a registered deed. It must, in the very nature of things, be so. The decree is a public record and the fountain-head of complainant's title. It is utterly impossible for them to trace their chain of title beyond their immediate vendor, without coming face to face with the lien."

A few preliminary questions may be briefly disposed of.

▮ Plaintiff argues that the superior court had no jurisdiction to declare defendant's lien in the decree of distribution, and that the provision of the decree purporting to impress such a lien upon the property distributed to Mrs. Vaughn is void. This portion of the decree was entered by consent, and no one appealed therefrom.

The superior court is a court of general jurisdiction, and a decree of distribution stands upon the same basis as any other judgment. The provision of the decree establishing the lien is not obnoxious to the attack levied against the same by plaintiff. *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147; *In re Thompson's Estate,* 110 Wash. 635, 188 Pac. 784; *In re Wren's Estate,* 163 Wash. 65, 299 Pac. 972; *Title Insurance & Trust Co. v. Miller & Lux,* 183 Cal. 71, 190 Pac. 433.

▮ Plaintiff also argues at considerable length that the Kitsap county property was the community property of Mr. and Mrs. Vaughn, and not Mr. Vaughn's separate property. In his will, Mr. Vaughn declared that the property was his separate estate, and Mrs.

Vaughn acquiesced in that portion of her husband's will. Under the circumstances disclosed by this record, her grantee cannot now contend that the property was community rather than Mr. Vaughn's separate estate. Mrs. Vaughn received the property by the decree of distribution and did not appeal from the decree.

▓ It is also argued that the superior court had no jurisdiction to distribute the estate in kind, and should have required the executor to sell the property and distribute the money; that, if this position is not correct, then it must be held that, under the law, the title to the property immediately vested in the devisees. It appears that all parties interested acquiesced in the distribution of the estate in kind. Mary Vaughn and Gwen Vaughn (leaving defendant out of consideration), together with the executor of the estate, were the sole persons interested. The decree was apparently entered after all jurisdictional steps were taken to make the same effective, and all parties having manifestly acquiesced therein, and no appeal therefrom having been taken, the decree constitutes a binding adjudication of the rights of the parties. In making this statement, we take into consideration the fact that Mary Vaughn quitclaimed to Gwen Vaughn the Kitsap county property, which is the subject matter of this action.

▓ Plaintiff, from the Kitsap county records, was advised that David and Gwen Vaughn had been husband and wife; that the property which it purchased had been conveyed to David Vaughn, once when he originally purchased it and again when he received the sheriff's deed after the foreclosure of his mortgage; that Gwen Vaughn was, at the time it purchased the property, a widow; that David Vaughn had died, leaving a will in which he named his sister, Mary Vaughn,

as a devisee. The office of the clerk of the superior court for Kitsap county disclosed no probate proceeding in connection with the estate of David Vaughn. In the sheriff's deed above referred to, David Vaughn is referred to as "of the county of Walla Walla."

The question, then, to be determined is: Has defendant lost his rights by failing to record the decree of distribution in Kitsap county, or was plaintiff required to take notice of this decree and defendant's rights thereunder, either as a general proposition of law or because the facts, of which plaintiff by the Kitsap county records had constructive notice, required him to investigate the nature and extent of Gwen Vaughn's title, and is plaintiff consequently bound by the lien established by the decree of distribution?

A decree of distribution, if rendered upon due process of law, is a final and conclusive adjudication determining the person or persons in whom the property of a decedent has vested. *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990. Such a decree may, by agreement of the parties, or, in certain cases, possibly without such an agreement, determine questions incidental to the main issue, and such an adjudication, if made under due process of law, is binding. In the case at bar, we are satisfied that the decree was effective to impress upon Mrs. Vaughn's distributive share a lien in defendant's favor; which lien is good as against persons having actual or constructive notice thereof, of course including persons having such notice of facts which in law must be held to put them upon inquiry which would lead to discovery of the provisions of the decree.

The recording acts now in force (§§ 10596-1, 10596-2 and 10605 [P. C. §§ 1914-1, 1914-2 and 1643], *supra*) are complete and comprehensive. We are con-

vinced that, as a basic proposition, in order to maintain his lien on property in Kitsap county, defendant was, by these sections, required to file for record in Kitsap county a certified copy of the decree establishing his rights. Whether the decree of distribution, under § 10605, be held to be a judgment affecting the title to the real property distributed to Gwen Vaughn, or, under §§ 10596-1 and 10596-2 [P. C. §§ 1914-1 and 1914-2], be held to be a "conveyance" of real estate, need not be decided.

Plaintiff argues that, in so far as defendant's lien is concerned, the decree of distribution is not a judgment, within the meaning of Rem. Rev. Stat., § 10605 [P. C. § 1643], *supra*. While that portion of the decree granting defendant's lien is not a judgment in the ordinary sense of the word, in that no amount is mentioned and for other obvious reasons, the decree itself is a judgment; and, in so far as it establishes defendant's lien, it "affects the title of real property," and, for this reason, it might well be contended that it falls within the scope of the section last referred to.

David Vaughn, by his will, devised and bequeathed all of his property (save one tract of land in California specifically devised to a third party) to his wife and sister, share and share alike. He then appointed H. H. Marshall his executor, to act without the intervention of the court, and directed his

" . . . said executor, so soon as convenient, using his business judgment, to convert my property, except that given Gertrude Lloyd, into cash, and to distribute the money to my said devisees,"

expressly empowering the executor to execute all necessary conveyances to carry the instruction into effect. Whether or not, under this will, Mr. Marshall should be considered as having received the title to the real estate as trustee, or whether the title to the real estate,

on Mr. Vaughn's death, vested in his devisees, subject to the direction to the executor to sell, need not be determined in this action. We will assume, without deciding, as argued by defendant, that Gwen Vaughn's title to the Kitsap county land was declared and vested in her by the decree of distribution. Whether or not Mary Vaughn was bound by this decree, is not important, as she ratified it and quitclaimed the property to Gwen Vaughn. The decree of distribution, in manner and form as signed, was agreed to by the parties and is binding upon them.

It is manifestly the intention of the recording acts of this state to require persons claiming an interest in real property to comply with the acts by filing for record in the county in which the real estate is situated such instruments as will give notice of their claims. Of course, the record title of a vendor is not the sole matter to be considered. One may take a deed from a person having no title whatever of record in the county where the real property is situated, or, in case of an heir, having no record title anywhere, and, if in fact the grantor owned the property, and no other conveyance by the grantor need be considered, the deed will vest title in the grantee; in the case of an heir, subject to administration. Ordinarily, the first conveyance to be recorded gains the statutory priority of right. The deed to plaintiff, then, was good as against defendant's lien, unless from the records of Kitsap county it must be held, as matter of law, that plaintiff was put upon inquiry as to the nature and extent of Gwen Vaughn's title.

Plaintiff strenuously argues that only the admission of David Vaughn's will to probate and the quitclaim from Mary Vaughn were necessary to establish Gwen Vaughn's chain of title. This argument is fallacious, as the land was subject to sale by the exec-

utor, and the entire property of the estate might have been appropriated to the payment of debts, taxes, and other expenses. Even the entry of an order of solvency does not clear the property so as to enable a devisee, as such, to give a title not subject to attack.

On the other hand, defendant argues that there is here no question of the appearance of a defect or outstanding equity in a recorded instrument forming a link in the chain of title, but rather the appearance of a record sufficient to require a prospective purchaser from Gwen Vaughn to search for and find the decree of distribution, without which defendant argues that neither Gwen Vaughn nor her successors in interest could deraign any title. Defendant, in this connection, contends that a purchaser from Gwen Vaughn was, at his peril, bound to discover the source of her title, which defendant contends is the decree; and that, if plaintiff had done this, it would at once have discovered defendant's lien.

It must be admitted that, in this case, blame rests upon each party. Defendant had at his disposal a simple and easy method by which he could have protected his rights. The filing for record in the office of the auditor of Kitsap county of a certified copy of the decree of distribution would have placed any purchaser of the land in that county upon notice of his claim. On the other hand, plaintiff purchased the land and paid the consideration therefor without a careful investigation of the extent and nature of its grantor's title.

In this connection, it is proper to consider that defendant's lien is something entirely extraneous to the chain of title. It rests upon an agreement between defendant and Gwen Vaughn. It was initiated by such an agreement and established by a consent decree entered pursuant thereto. Had defendant's lien been established by some decree other than that which de-

clared Gwen Vaughn's title, it can hardly be contended that defendant's rights would not have been lost had he failed to take the statutory steps necessary to place his claim of record in Kitsap county. Defendant's right, then, depends upon whether or not plaintiff was obligated to search for and find the decree of distribution, and that, having failed to do so, plaintiff is bound by defendant's lien.

Defendant relies upon the case of *Bullock v. Wallace*, 47 Wash. 690, 92 Pac. 675, in which it was held that a recorded quitclaim deed from the owner of a tax title, void, in fact, because the grantor's wife did not join therein, was sufficient to put grantees of the property, also claiming title from the owner of the tax title, upon inquiry, as such inquiry would have disclosed that the first and void quitclaim deed was made to correct a mistake which had rendered the tax title void. The case cited is not controlling. The grantor in the deed, which it was held put persons subsequently acquiring an interest in the property on notice, was one of the grantors in the later deed. In the case at bar, none of the instruments of record in Kitsap county even suggested that any such claim as that of defendant ever existed. The records merely fail to disclose a complete chain of title of record in Gwen Vaughn—a very different matter.

It often happens that an heir or devisee will convey his interest in the real property belonging to such an estate long before the same is ready to be closed and the property thereof distributed to those entitled to receive the same. Such conveyances are often called to the attention of the court prior to the entry of the decree of distribution, and the property then distributed to the successor in interest of the heir. Such a deed must be filed for record in the office of the auditor of the county in which the land is situated in

order to protect the grantee against a subsequent sale of the same property by his grantor to an innocent purchaser.

Sections 10596-1 and 10596-2 [P. C. §§ 1914-1 and 1914-2], *supra,* enacted in 1927, undoubtedly indicate a legislative intention to make the recording acts of this state more stringent as against one having an unrecorded right in land, and in favor of a purchaser without notice of such claim. Since the passage of this act, we have, when called upon to construe the same, recognized that principle in an endeavor to carry into effect the legislative intention. *Price v. Northern Bond & Mortgage Co.,* 161 Wash. 690, 297 Pac. 786; *Kroetch v. Hinnenkamp,* 171 Wash. 518, 18 P. (2d) 491; *Richards v. Lawing,* 175 Wash. 544, 27 P. (2d) 730; *Dunn v. Neu,* 179 Wash. 351, 37 P. (2d) 883. This, to some extent, answers defendant's argument that recording acts, being unknown to the common law, should not be held applicable to a given situation, unless it clearly appears that they apply.

Granting that plaintiff, in purchasing the property from Gwen Vaughn and paying her the full purchase price, assumed risks which, because of some defect in her title, might have caused it to suffer loss, we are nevertheless of the opinion that, in so far as defendant's claim is concerned, defendant having failed to comply with the recording acts by filing for record in Kitsap county the instrument establishing his claim, the land so purchased from Gwen Vaughn cannot, as against plaintiff, be held subject to defendant's lien. The trial court, therefore, erred in rendering judgment in defendant's favor holding his lien upon the land superior to plaintiff's rights under its deed.

Plaintiff assigns error upon the ruling of the trial court striking from the complaint its claim for damages. This assignment of error, not having been

argued or briefed by plaintiff, will not be considered.

The decree appealed from is reversed, with instructions to the trial court to proceed in accordance with the views herein expressed.

TOLMAN, HOLCOMB, STEINERT, BLAKE, MITCHELL, and MAIN, JJ., concur.